[No. S131030. Feb. 2, 2006.]

In re the Marriage of NICOLE F. BROWN and ANTHONY YANA.
NICOLE F. BROWN, Respondent, v.
ANTHONY YANA, Appellant.

## Counsel

John F. Hodges, Daniel L. Helbert; Misho, Kirker & Associates and Vanessa Kirker for Appellant.

Law Offices of Jeffrey W. Doeringer and Jeffrey W. Doeringer for Respondent.

Judy Wood for Minor.

## Opinion

**BAXTER, J.**—In this case, a parent who had been awarded sole legal and sole physical custody of a child after a contested custody dispute sought to relocate with her child to Nevada. The noncustodial parent opposed the relocation and sought, among other things, to have the matter addressed in an evidentiary hearing, i.e., a contested hearing with live testimony. The trial court denied the noncustodial parent's applications to restrain the relocation and to modify custody without holding an evidentiary hearing. The Court of Appeal reversed, holding that "in a 'move-away' case, a parent without legal or physical custody is entitled to an evidentiary hearing."

We conclude the trial court did not err or abuse its discretion in denying relief without holding an evidentiary hearing. We therefore reverse the judgment of the Court of Appeal.

### Facts

The relevant facts are undisputed.

In 1994, Nicole F. Brown and Anthony Yana obtained a dissolution of their marriage. In 1999, the court awarded Brown sole legal custody and sole physical custody of their son, Cameron, following a psychological evaluation of the parties and a contested evidentiary hearing on custody. After these events, Brown and Yana each continued to reside in San Luis Obispo County. Brown remarried and has two children with her second husband.

On June 12, 2003, Yana filed an order to show cause to modify legal custody of Cameron from sole to joint, to expand his visitation, and to appoint counsel for Cameron, who was then 12 years old.[1] Yana asserted in a supporting declaration that his relationship with Brown had improved significantly, that Cameron expressed an interest in spending more time with him, and that Cameron was doing well in his academic and social relationships. Shortly thereafter, Brown informed Yana she was moving with Cameron to Las Vegas, Nevada, at the end of the summer. On June 27, 2003, Yana filed an order to show cause to restrain any change of residence for Cameron and to request a psychological evaluation and a contested evidentiary hearing on the move-away issue.

Also on June 27, 2003, Brown filed an order to show cause to adjust Yana's visitation schedule upon her move to Nevada. She stated in a supporting declaration that her husband had taken a job in Las Vegas and that the family would be residing in Green Valley, Nevada. She also stated Cameron was extremely close to his two half siblings, and that they miss one another when apart. Brown asserted there was no basis for Yana's requested relief because, as Yana admitted, Cameron was doing well in her sole custody. Moreover, she contended, she had a legitimate reason for the residential move, and the move would not constitute a change of circumstances. Brown objected to a psychological evaluation on the ground that her family had already been through two of them, and claimed Yana told her he wanted more time with Cameron to stop her from moving. Finally, with the planned relocation in mind, Brown offered an increase in Yana's summer visitations with Cameron in the event Yana did not like her proposal to modify his weekend visitations.

The trial court temporarily restrained Brown from moving away with Cameron, appointed an attorney for Cameron, and set the matters for a hearing.

---

[1] In family law proceedings, a party may seek relief from the trial court by an order to show cause or other application. (See Cal. Rules of Court, rule 5.118.)

At the hearing, the trial court expressed its reluctance to grant Yana's requests for relief.[2] Although Yana acknowledged that Brown was not seeking to relocate in bad faith, he argued that Cameron's removal could be restrained "if it would prejudice the rights or the welfare of the child." Yana, however, disclaimed any obligation to plead or otherwise show prejudice before the setting of an evidentiary hearing—i.e., a contested hearing where he would offer oral testimony on the matter. When the court queried whether Yana "shouldn't . . . tell us a little something before we launch into all of this," Yana reiterated the need for an independent evaluation to explore Cameron's feelings about moving to Las Vegas. He also repeated his request for an evidentiary hearing, stating he was prepared to offer "a lot of evidence about Las Vegas, Nevada, such as the high student-to-teacher ratio; the fact that the state of Nevada has one of the highest dropout rates in junior high and high school of any state in the nation; the amount of crime over there; the volume of the people moving in and out of the community of Las Vegas, Nevada, and what the transient effect has upon people in that community."

Cameron's court-appointed attorney reported at the hearing what Cameron had told him during interviews at each parent's home. The attorney offered his opinion, based on everything Cameron had said and done, that Cameron was "a conflicted young man," who said "different things at different times, based upon who he happened to be with at the time."

At the hearing's conclusion, the trial court denied Yana's requests for relief. In doing so, the court commented that a full contested hearing following psychological examinations had occurred in 1999, resulting in an award of sole legal and physical custody of Cameron to Brown.[3] Given that judicial custody order, the court determined that Yana was required to assert some detriment to warrant an evidentiary hearing. The court expressed its awareness "that children are disoriented when they move [and] it's not comfortable for them," but concluded that "that level of discomfort for the child is not what detriment or substantial changed circumstances is about sufficient to change custody from mom here to dad." In light of the move, however, the court found Yana entitled to a hearing on visitation and later established a modified visitation schedule.

---

[2] The record reflects the trial court understood Yana's request regarding Brown's proposed relocation with Cameron as an application for a change of custody based on the relocation. We have the same understanding, based on Yana's arguments in the trial court and on appeal.

[3] The 1999 order included findings that: (1) Yana had not been honest or truthful with the court, his attorney, and others; (2) following a license suspension for driving under the influence, Yana drove without a license with Cameron in the car and put Cameron at risk of being taken into protective custody; and (3) Yana engaged in at least two other instances of unwise parenting.

Yana appealed. The Court of Appeal reversed in a split decision, holding that, in a move-away case, a parent with no legal or physical custody rights is entitled to an evidentiary hearing.

We granted Brown's petition for review.

DISCUSSION

The question presented is this: In a case where sole legal and sole physical custody of a child has been awarded to one parent after a contested custody dispute, and the custodial parent's subsequent decision to relocate with the child is opposed by the noncustodial parent, is the noncustodial parent entitled to an evidentiary hearing on the matter?

Brown contends the Court of Appeal's affirmative answer to this question is wrong. Starting from the premise that a parent who has been awarded sole legal and sole physical custody has the exclusive statutory right and responsibility to make all decisions regarding the minor child's residence and schooling, Brown first argues the noncustodial parent may not obtain a change in custody, or any evidentiary hearing on the matter, based on the custodial parent's decision to relocate. Even assuming otherwise, she asserts, the trial court retains discretion to deny a custody modification request without a full evidentiary hearing where, as here, no prima facie showing of detriment to the child has been made.

We begin by addressing Brown's first contention, as it potentially is dispositive.

A. *May a parent without legal and physical custody seek and obtain a custody change based on the custodial parent's decision to relocate with their child?*

California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code (all further statutory references are to this code unless otherwise indicated). Under this scheme, "the over-arching concern is the best interest of the child." (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 [109 Cal.Rptr.2d 575, 27 P.3d 289] (*Montenegro*).)

For purposes of an initial custody determination, section 3040, subdivision (b), affords the trial court and the family " 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31 [51 Cal.Rptr.2d 444, 913 P.2d 473] (*Burgess*).) When the parents are unable to agree on a custody arrangement, the court must determine the best interest of the child by setting

the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents. (§§ 3011, 3185, subd. (a); see *Montenegro, supra*, 26 Cal.4th at pp. 255–256.)

■ Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining" that custody arrangement. (*Burgess, supra*, 13 Cal.4th at pp. 32–33.) In recognition of this policy concern, we have articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination. (*Montenegro, supra*, 26 Cal.4th at p. 256, relying on *Burchard v. Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486].) Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates "a significant change of circumstances" indicating that a different custody arrangement would be in the child's best interest. (*Ibid.*) Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy. (*Ibid.*)[4]

■ The Family Code contemplates that, in making a custody determination, consideration of the best interest of the child may lead the trial court to award custody either to both parents (joint or shared custody) or to only one parent (sole custody). If a parent is awarded "sole legal custody," that means the parent "shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (§ 3006.) If a parent is awarded "sole physical custody," that means the child "shall reside with and be under the supervision" of the custodial parent, "subject to the power of the court to order visitation" for the noncustodial parent. (§ 3007.)

Brown argues, in effect, that sections 3006 and 3007 permit a parent with sole legal and sole physical custody to unilaterally supervise and make all decisions regarding a minor child's residence and schooling, thereby conferring a right to relocate with the child without interference from the noncustodial parent. In her view, the Court of Appeal's conclusion that a parent with no legal or physical custody is entitled to an evidentiary hearing to

---

[4] A stipulated custody order qualifies as "a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result." (*Montenegro, supra*, 26 Cal.4th at p. 258.)

relitigate custody over a proposed move-away cannot be squared with these statutory provisions. We are not persuaded.

■ Brown concedes, as she must, that another provision of the Family Code, section 7501, expressly addresses the right of a custodial parent to relocate with a child. By its terms, section 7501 unambiguously provides the right is not absolute and may be curtailed if the move would result in detriment to the child: "A parent entitled to the custody of a child has a right to change the residence of the child, *subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child.*" (§ 7501, subd. (a), italics added.) Notably, the statute contains no qualifying language purporting to limit its application to parents with only certain custodial rights. Thus, while sections 3006 and 3007 recognize the general right of a parent with sole custody to supervise and make decisions regarding a child's residence and education, section 7501, fairly read, contemplates that even a parent with sole legal and sole physical custody may be restrained from changing a child's residence, if a court determines the change would be detrimental to the child's rights or welfare.

■ Not only does section 7501 undermine any notion of a custodial parent's absolute right to relocate with a child, but so does the lack of any California decision supporting such a proposition. The seminal decision of *Burgess, supra,* 13 Cal.4th 25, referred to the right of a custodial parent to change the residence of a child as a *presumptive* right that might not prevail if the move would result in detriment to the child.[5] (*Burgess,* at p. 35.) Decisions subsequent to *Burgess* uniformly acknowledge that, even where a permanent custody order is in place, the custodial parent's right to relocate with a child remains subject to the changed circumstance rule. (E.g., *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088–1089 [12 Cal.Rptr.3d 356, 88 P.3d 81] (*LaMusga*); *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 432–434 [25 Cal.Rptr.3d 379]; *In re Marriage of Campos* (2003) 108 Cal.App.4th 839, 843 [134 Cal.Rptr.2d 300] (*Campos*); *In re Marriage of Edlund & Hales* (1998) 66 Cal.App.4th 1454, 1468–1469 [78 Cal.Rptr.2d 671]; *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 140–141 [61 Cal.Rptr.2d 559].)

Brown attempts to distinguish *Burgess* and its progeny on the ground they did not involve a parent with sole legal *and* sole physical custody. We are not convinced. Like the situation here, some of the cases were decided in the context of a relocation sought by a parent with sole *physical* custody. (E.g., *Burgess, supra,* 13 Cal.4th at p. 29 [stipulated order provided for temporary

---

[5] In 2003, the Legislature codified *Burgess* by amending section 7501 to read: "It is the intent of the Legislature to affirm the decision in *In re Marriage of Burgess, supra,* 13 Cal.4th 25, and to declare that ruling to be the public policy and law of this state." (§ 7501, subd. (b), as amended by Stats. 2003, ch. 674, § 1.)

joint legal custody and sole physical custody to mother]; *Osgood v. Landon, supra,* 127 Cal.App.4th at pp. 431–432 [stipulated order provided for joint legal custody, but default judgment awarded sole physical custody to mother]; *Campos, supra,* 108 Cal.App.4th at p. 841 [judicial custody order provided for joint legal custody and sole physical custody to mother].) Those decisions hold or otherwise acknowledge that an order for sole physical custody may be modified, despite the general importance of maintaining ongoing physical custody arrangements, if relocation with the custodial parent will cause the child to suffer detriment, thus rendering it essential or expedient for the child's welfare that there be a custody change (*Burgess, supra,* 13 Cal.4th at p. 38; see also *LaMusga, supra,* 32 Cal.4th at pp. 1088–1089). None of the decisions, moreover, attributes any significance to the presence of a joint *legal* custody arrangement or the absence of one for sole *legal* custody.

Brown additionally contends that a parent with no custodial rights has no standing to challenge the custodial parent's decision to relocate. That contention lacks merit. As indicated, section 7501, subdivision (a), provides that a custodial parent's right to change the residence of the child is "subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child." It is reasonable to infer from this language, as *Burgess* and its progeny have, that the noncustodial parent may request a court to exercise this power. Conversely, section 7501's language is not reasonably susceptible of a construction that bars a noncustodial parent from doing so.

█ Moreover, we recently recognized in a similar context that an award of sole legal and sole physical custody of a child to one parent does not serve to "terminate" the other's parental rights or due process interest in parenting. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 227 [17 Cal.Rptr.3d 842, 96 P.3d 141] (*Harris*).) In *Harris,* we addressed section 3104's provisions for court-ordered grandparent visitation over the objection of the parent with sole custody. As part of our analysis, we rejected the attempt of a mother who had been awarded sole legal and sole physical custody to liken the noncustodial father to a deceased parent and to equate herself to a sole surviving parent whose right to the custody and control over her child would be infringed by court-ordered grandparent visitation under section 3104. (*Harris,* at p. 227.) Consistent with *Harris,* we find the award of sole custody to Brown did not terminate any right of Yana to seek relief under section 7501. Indeed, *Harris* stands as an example that a parent cannot rely on an award of sole custody to shield herself from a court order to which she objects, where such order is supported by the noncustodial parent and is in the best interest of the child.[6]

---

[6] The statute at issue in *Harris,* section 3104, permits a grandparent to petition for visitation, but provides a rebuttable presumption that grandparent visitation is not in the child's best interest where a parent with sole custody of a child objects to such visitation. (§ 3104, subd. (f).) Although we did not uphold the trial court's order allowing grandparent visitation

■ In sum, we conclude that, where a final custody order had awarded sole legal and sole physical custody to the parent seeking to relocate with a child, the noncustodial parent opposing the relocation may seek and obtain a custody modification based on a proper showing pursuant to the changed circumstance rule.

> B. *What right, if any, does a noncustodial parent have to an evidentiary hearing to relitigate custody over a proposed move-away?*

Having concluded that a parent without legal and physical custody may seek a change in custody based on the custodial parent's decision to relocate with their child, we now determine whether and to what extent a trial court must hold an evidentiary hearing on the matter. Although we generally described the standard for custody modification in a move-away case in part A, above, we elaborate on that standard as part of our analysis here.

■ A custodial parent seeking to relocate after dissolution of marriage need not establish the move is "necessary" in order to be awarded physical custody of a minor child, or to retain physical custody under an existing custody order. (*Burgess, supra,* 13 Cal.4th at p. 37.) Moreover, while a decision to change a child's residence ordinarily does not reflect upon the parent's suitability to retain custody, "[a]n obvious exception is a custodial parent's decision to relocate simply to frustrate the noncustodial parent's contact with the minor child[]." (*Id.* at p. 36, fn. 6.) In this regard, "[e]ven if the custodial parent is otherwise 'fit,' such bad faith conduct may be relevant to a determination of what permanent custody arrangement is in the minor child[]'s best interest." (*Ibid.*)[7]

■ When a final judicial custody determination is in place (see also *ante,* fn. 4), and a noncustodial parent seeks to modify custody in response to a proposed relocation, the trial court must apply the changed circumstance rule. Although the noncustodial parent is not required to show a custody modification is "essential" to prevent detriment to the child from the planned move, he or she bears the initial burden of showing that the proposed

---

over the mother's objection, we remanded the matter to permit reconsideration of that order in light of the statutory presumption, which the trial court had failed to utilize. (*Harris, supra,* 34 Cal.4th at p. 214.)

[7] Although a court need not evaluate the wisdom of the custodial parent's decisionmaking, "[e]ven if the custodial parent has legitimate reasons for the proposed change in the child's residence and is not acting simply to frustrate the noncustodial parent's contact with the child, the court still may consider whether one reason for the move is to lessen the child's contact with the noncustodial parent and whether that indicates, when considered in light of all the relevant factors, that a change in custody would be in the child's best interests." (*LaMusga, supra,* 32 Cal.4th at p. 1100, fn. omitted.)

relocation of the child's residence will cause detriment to the child, requiring a reevaluation of the existing custody order. (*LaMusga, supra*, 32 Cal.4th at p. 1078; see also *id.* at p. 1096; *Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996 [20 Cal.Rptr.3d 522] ["[t]he changed circumstances test requires a threshold showing of detriment before a court may modify an existing final custody order that was previously based upon the child's best interest"].) Imposing this burden on the noncustodial parent is consistent with the recognition that " 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements.' " (*LaMusga*, at p. 1093, quoting *Burgess, supra*, 13 Cal.4th at pp. 32–33.)

The changed circumstance rule requires a substantial showing to modify a final judicial custody determination. "In a 'move-away' case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ' "essential or expedient for the welfare of the child that there be a change." ' " (*Burgess, supra*, 13 Cal.4th at p. 38.)

In applying this rule, we affirmed a custody modification order where evidence established that the custodial parent tended to alienate the children from the noncustodial parent, the children's relocation some 2,000 miles away would not promote frequent and continuing contact with the noncustodial parent, and the primary loss to the children pertained to the growing and improving relationship with the noncustodial parent. (*LaMusga, supra*, 32 Cal.4th at pp. 1083–1085.) In another case, a custody modification order was affirmed where evidence showed the child would not have adequate medical care in the new location and would not transition well to a new school or new surroundings. (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 612 [18 Cal.Rptr.3d 685] [involving a child with Down's syndrome and a heart condition].) Ultimately, "[t]he extent to which a proposed move will detrimentally impact a child varies greatly depending upon the circumstances." (*LaMusga*, at p. 1097.)

■ If the noncustodial parent makes the required initial showing of detriment, the court is then obligated to "perform the delicate and difficult task of determining whether a change in custody is in the best interests" of the child. (*LaMusga, supra*, 32 Cal.4th at p. 1078.) Among the factors the court ordinarily should consider when deciding whether to modify custody in

light of a proposed move are the following: the child's interest in stability and continuity in the custodial arrangement; the distance of the move; the child's age; the child's relationship with both parents; the relationship between the parents, including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the child's interests above their individual interests; the child's wishes if the child is mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently share custody. (*LaMusga*, at p. 1101.)

▇ The trial court enjoys "wide discretion" to order a custody change based upon a showing of detriment, including detriment caused to the relationship between the noncustodial parent and the child, if such a change is in the best interest of the child in light of all the relevant factors. (*LaMusga*, *supra*, 32 Cal.4th at p. 1095.) That is, a reviewing court generally will leave it to the trial court to assess the detrimental impact of a proposed move in light of other relevant factors in determining what is in the best interest of the child. (*Id.* at p. 1097.)

Section 7501, we observe, does not speak to the matter of evidentiary hearings in the event a noncustodial parent seeks to restrain a removal allegedly prejudicing the rights or welfare of the child. However, two other provisions—section 3170 and section 3185—generally apply when a parent seeks to modify custody on any basis, including, accordingly, a proposed relocation.

Section 3170 provides in relevant part: "(a) If it appears on the face of a petition, application, or other pleading to obtain or modify a temporary or permanent custody or visitation order that custody, visitation, or both are contested, the court shall set the contested issues for mediation." In turn, section 3185 provides: "(a) If issues that may be resolved by agreement pursuant to Section 3178[8] are not resolved by an agreement of all the parties who participate in mediation, the mediator shall inform the court in writing and *the court shall set the matter for hearing on the unresolved issues*." (Italics added.)

*In re Marriage of Dunn* (2002) 103 Cal.App.4th 345 [126 Cal.Rptr.2d 636], considered the type of hearing required when a parent seeks modification of a postdissolution child custody order. There, the trial court had modified a preexisting custody order so as to effectively prohibit the father's new wife from participating in certain school, church, and scouting activities

---

[8] Section 3178 provides in pertinent part that where mediation is required to settle a contested issue of custody or visitation, an agreement between the parties resulting from mediation "shall be limited" to "the resolution of issues relating to parenting plans, custody, visitation, or a combination of these issues."

during the times when the mother had custody of the children. The matter was handled in two unreported informal chambers proceedings with only counsel present. In reversing the modification order, *Dunn* relied on sections 3170 and 3185 for the proposition that, where mediation fails to resolve a custody dispute, "[t]he context of postjudgment modification orders appears to contemplate an oral hearing," where the party opposing a requested modification is "apprised of the date, time and place of the hearing, sufficiently in advance to appear or otherwise protect his or her interests." (*Dunn*, at p. 348.) After noting the need for a party to introduce admissible evidence of changed circumstances at a formal hearing, *Dunn* indicated that an "evidentiary hearing" of contested factual issues should be conducted "if necessary." (*Ibid.*) In reaching its conclusions, *Dunn* emphasized that " '[i]n spite of the need for efficiency, courts should not lose sight of the need that parties be given their "day in court." ' " (*Ibid.*) *Dunn* additionally observed that "[u]nreported informal chambers proceedings hamper the opportunity for meaningful appellate review." (*Ibid.*)

■ Consistent with *Dunn*, we hold an evidentiary hearing in a move-away situation should be held only if necessary. Where, as here, one parent has been awarded sole legal and sole physical custody of a child, and the noncustodial parent opposes the custodial parent's decision to relocate with the child, a trial court may deny the noncustodial parent's requests to modify custody based on the relocation without holding an evidentiary hearing to take oral evidence if the noncustodial parent's allegation or showing of detriment to the child is insubstantial in light of all the circumstances presented in the case, or is otherwise legally insufficient to warrant relief.

Needless to say, an evidentiary hearing serves no legitimate purpose or function where the noncustodial parent is unable to make a prima facie showing of detriment in the first instance, or has failed to identify a material but contested factual issue that should be resolved through the taking of oral testimony. As in other family law contexts, application of this procedure in move-away cases fosters the goal of judicial economy and reduces litigation costs and unnecessary distress for the parents and children involved. It also serves to protect the policy considerations underlying the changed circumstance rule, particularly in the context of a case in which the trial court has already determined that the moving parent "shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (§ 3006.)

As sections 3170 and 3185 contemplate, the trial court here referred the underlying dispute to mediation[9] and set the matter for a formal court hearing. At the hearing, the court made every effort to provide Yana a reasonable

---

[9] Yana failed to attend the mediation.

opportunity to make his case for modifying custody based on Brown's proposed relocation with Cameron. It reviewed the parties' applications and supporting declarations and papers, and diligently inquired into whether or not Yana would be able to prove detriment if he were granted the full evidentiary hearing he desired. In this connection, the court permitted Yana to make an offer of proof, despite his failure to allege facts establishing detriment in the documents supporting his orders to show cause. The court declined to order an evidentiary hearing only after determining that Yana's offer of proof did not tend to demonstrate the planned move would be detrimental to Cameron.

Review of the record compels us to uphold the trial court's actions. The record reflects that Yana's orders to show cause and his supporting papers did not identify any detriment to Cameron that might result from the proposed move. At the court hearing, Yana conceded that Brown was not seeking to relocate in bad faith. Consistent with this concession, and with Brown's proposal for a slight modification in visitation, Yana made no claim that Brown sought to use the relocation to limit his contact with Cameron.

The record additionally shows that when the court pressed Yana for a description of the detriment he claimed, Yana merely offered to produce "a lot of evidence about Las Vegas, Nevada, such as the high student-to-teacher ratio; the fact that the state of Nevada has one of the highest dropout rates in junior high and high school of any state in the nation; the amount of crime over there; the volume of people moving in and out of the community of Las Vegas, Nevada, and what the transient effect has upon people in that community." Like the trial court, we conclude this was insufficient to justify an evidentiary hearing given the record as a whole. Even if Yana were to produce such evidence, and even assuming it were uncontroverted, such evidence would be relevant merely to establish only certain generalities concerning the standard of living and schooling in Las Vegas and more broadly in Nevada. Standing alone, such evidence did not tend to show that a move to Las Vegas would, with specific reference to Cameron or Brown's plans for Cameron, "prejudice [his] rights or welfare." (§ 7501, subd. (a).) Likewise, such evidence did not suggest that Cameron could not or would not thrive in the new location with his mother, stepfather, and two half siblings.[10]

At Yana's request, the trial court also conducted an inquiry into Cameron's preferences regarding custodial placement. The court appointed counsel for

---

[10] Strictly speaking, Brown and her current husband purchased a home in Green Valley, which is approximately 20 minutes away from the husband's job in Las Vegas. Our reasoning, however, would remain the same if the move was in fact to Las Vegas proper.

Cameron and, at the hearing on the proposed move-away, heard counsel's report of his interviews with Cameron at each parent's home. Counsel noted that, during these interviews, Cameron spoke favorably of his relationship with his two half siblings and his stepfather's involvement in his life. He also mentioned his ties and friends in San Luis Obispo County and was naturally reluctant to break those ties. Later, however, Cameron telephoned counsel from his father's house, claimed he did not feel comfortable saying what his real thoughts were while at his mother's house, and said he would really like to stay with his father. Cameron also mentioned the existence of "problems" in his mother's home, but that seemed to counsel "to be a paraphrase . . . of what he might have heard from someone else." Counsel offered his opinion, based on everything Cameron said and did, that Cameron was "a conflicted young man" who said "different things at different times, based upon who he happened to be with at the time." After ascertaining that counsel had articulated "everything that Cameron wants me to know," the court expressed its awareness that "children are disoriented when they move [and] it's not comfortable for them." The court concluded, however, that "that level of discomfort for the child is not what detriment or substantial changed circumstances is about sufficient to change custody from mom here to dad."

We are not prepared to hold, as a matter of law, that a showing of a child's discomfort at the prospect of moving can never suffice to establish or support a finding of detriment for purposes of the changed circumstance rule. Nonetheless, the record here amply supports the trial court's decision to forgo an evidentiary hearing. There was no issue of any bad faith on Brown's part, and no concern expressed that she might use the relocation to limit Yana's contact with Cameron. The detriment Yana described regarding the standard of living and schooling in Las Vegas and Nevada, without more, would merely show detriment in the abstract. The only other consideration before the court was counsel's report of Cameron's conflicted feelings over moving,[11] but there was nothing to indicate the move would subject Cameron to anything atypical or unusual for a move-away situation. Notably, Yana made no effort to offer facts or evidence showing that the relocation would detrimentally affect Cameron's rights or his well-being, or that it would

---

[11] Yana appears to complain the trial court should have allowed Cameron himself to testify. Although a trial court is authorized to consider and give due weight to the wishes of a child who is of sufficient age and capacity so as to form an intelligent preference as to custody (§ 3042, subd. (a)), it need not call a child as a witness where the best interest of the child so dictates, and may instead provide alternative means of obtaining information regarding the child's preferences (*id.*, subd. (b)). By appointing counsel to represent and interview Cameron and having counsel report the results of his interviews at the hearing, the court obtained the information sought regarding Cameron's views. Yana does not establish error or abuse of discretion under section 3042.

alienate the father-son relationship. Because these circumstances disclosed no need for further assessment, the court acted well within its discretion to deny Yana's request for an evidentiary hearing.

In the proceedings below, the Court of Appeal concluded that Yana, as a parent without legal or physical custody who objected to a move-away, was entitled, essentially as a matter of law, to an evidentiary hearing. In doing so, the appellate court relied primarily on *Campos, supra,* 108 Cal.App.4th 839, in which the father sought to modify a child custody and visitation order in response to the mother's decision to move with their two sons to a town approximately two hours away by car. In *Campos,* the trial court read *Burgess, supra,* 13 Cal.4th 25, as requiring denial of the father's order to show cause for custody modification without an evidentiary hearing because there was no allegation of bad faith in the planned move. (*Campos,* at p. 842.) Accordingly, the trial court failed to consider the father's evidence that the move would be detrimental to the children's welfare. *Campos* held this was error. Finding that evidence of bad faith and evidence of detriment to the child are both relevant issues in a move-away case, *Campos* remanded the matter to the trial court so it could consider the issue of detriment in an evidentiary hearing. (*Id.* at p. 844.)

Contrary to the Court of Appeal's conclusion here, *Campos* does not stand for the proposition that a noncustodial parent who opposes a move-away has an absolute right to an evidentiary hearing for purposes of establishing detriment to a child or determining the best interest of a child. Reasonably viewed, *Campos* simply recognized the duty of the trial court to consider all relevant issues in a move-away case. Where, as here, a trial court in a move-away case diligently inquires into the matter of detriment in a formal court hearing, and duly considers the noncustodial parent's claims, evidence, and offers of proof but properly finds them insufficient to establish the detriment required for a custody modification under the changed circumstance rule, the court does not err or abuse its discretion in denying custody modification without taking the further step of holding an evidentiary hearing with live testimony.[12] (Cf. *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1059, fn. 3 [202 Cal.Rptr. 116] [citing favorably to the trial court's procedure of allowing counsel to make offers of proof of matters not in the declarations and making inquiries of the parties and counsel as necessary to gain information it needed to rule on a family law matter].)

---

[12] We note *Campos* involved a situation where the parent seeking the custody change sought to offer "evidence that the move would cause detriment to the children because they were opposed to the move and because it would separate them from their extended family, friends and classmates." (*Campos, supra,* 108 Cal.App.4th at p. 843.) Although some of the evidence Yana offered seems similar to the father's evidence in *Campos,* the trial court here cannot be faulted because it solicited and considered Yana's offer of proof, as well as appointed counsel's report of the child's views, before making its rulings.

## Disposition

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Cooper, J.,* concurred.

---

*Presiding Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.