Filed 5/12/26 William B. v. Ann R. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WILLIAM B., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANN R., <br><br> Defendant and Appellant. | A172909 <br><br><br> (Napa County Super. Ct. No. 17 FL 000991) |

Ann R. (Ann), representing herself, appeals an order awarding William B. (William) sole legal and physical custody of their son, J.B.[1]  She contends

---

[1] To protect the child's privacy interests, we refer to him by his initials. (Cal. Rules of Court, rule 8.90(b)(1).)  We refer to other persons by their first names and last initials where the use of their full name would defeat the objective of anonymity for the child.

We deny Ann's motions to seal the appellate record and treat it as confidential, or alternatively, to seal large portions of the record.  The record below does not appear to be filed under seal, and Ann failed to carry her burden to show an overriding interest justifying a sealing order in this court. (*McNair v. National Collegiate Athletic Assn.* (2015) 234 Cal.App.4th 25, 32; *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1217–1218, 1222, fn. 46 [identifying test for sealing records and identifying examples of circumstances in which there is an overriding interest in closure].)  Moreover, except for two briefs from J.B.'s counsel and the statement of decision, she failed to transmit the record to this court in a manner that would preserve the confidentiality of the record lodged, such as

the trial court erred by finding she perpetrated an act of domestic violence against J.B. and applying the presumption against awarding her sole or joint custody under Family Code section 3044. (Undesignated statutory references are to this code.) We affirm.

## BACKGROUND

Ann and William were in a relationship in 2007 but never married. J.B. was born in September 2010. Ann and William's relationship ended in 2016.

In November 2017, William filed a petition to establish a parental relationship, as well as joint physical and legal custody of J.B. In his request for order, he alleged Ann had been driving under the influence and abusing alcohol while caring for J.B. By January 2018, William and Ann agreed to joint legal and physical custody, with alternating weekly visitation. They further agreed neither party would consume alcohol at least 24 hours prior to and during their physical custody periods, both parents would submit to

---

labeling the contents as filed "CONDITIONALLY UNDER SEAL" or filing a redacted version. (Cal. Rules of Court, rule 8.46(c); *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1415.)

We also deny her request for judicial notice of a declaration in support of a request to deposit minor's counsel fees in a trust pending appeal, notice of a federal tax lien against minor's counsel, and local rules governing the complaints regarding counsel appointed to represent minors. Those documents have no bearing on the issues on appeal. (Evid. Code, § 452; *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.)

After briefing was completed, Ann filed a motion asking us to consider additional evidence — J.B.'s report card, a school notification regarding J.B.'s failure to attend classes, and a March 2026 email exchange between Ann and William — under Code of Civil Procedure section 909. We deny her request because there are no exceptional circumstances that warrant considering this evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [authority under Code Civ. Proc., § 909 " 'should be exercised sparingly' "].)

random breathalyzer testing by the other party immediately prior to and during their custodial periods, and J.B. would begin counseling with an agreed-upon child psychologist. In October 2018, the trial court appointed minor's counsel to represent J.B. at William's request.

A series of requests to change this order followed, but the parties again agreed in November 2022 to maintain joint legal and physical custody, alternating regular parenting time with J.B. on a weekly basis. The agreement required Ann to submit to Soberlink alcohol testing when she had physical custody of J.B. Positive results would trigger certain repercussions, including forfeiting her physical custody periods. As mandated, she complied with these conditions for four months and successfully completed the program.

In April 2023, J.B.'s counsel sought a temporary emergency change to the custody order. J.B. — then 12 years old — wanted discretion to stay with either parent for any length of time. Though J.B.'s stays with Ann were generally without incident, at times they had disagreements that escalated into physical altercations and emotionally damaging interactions. J.B.'s medical notes contained reports that Ann had hit him on the shoulders, though not at full strength. In another incident, she tackled him and pushed him to the ground. Conferring J.B. with more choice about physical custody, his counsel argued, would give him the opportunity to "cool off" after their arguments without violating any custody arrangement.

In a stipulated June 2023 order, Ann — at the time represented by counsel — and William agreed to granting J.B. "discretion to discontinue any period of visitation with a parent." Both parents were required to "cooperate in facilitating the change to the other parents' home as quickly as reasonably possible for the remainder of the visitation period" when J.B. communicated a

3

desire to exercise his discretion. The stipulated order precluded J.B. from exercising this option to avoid tasks or discipline.

In August 2023, William requested a temporary emergency change to child custody. He alleged that, a few days prior in July, Ann bit J.B. on the hand and left a significant mark. In opposition, Ann declared J.B. became upset when she refused to bake him something late at night. He called her " 'a fucking bitch' " twice. She attempted to take away his phone as a punishment, but he walked into his bedroom. She again attempted to take the phone away, but he pinned her down on the bed and choked her. According to Ann, she bit J.B. in self-defense. Child Welfare Services investigated the incident but closed it after finding allegations of physical abuse by Ann as inconclusive. No criminal charges were filed. The trial court issued temporary orders suspending the June 2023 custody order with no visitation for Ann aside from phone calls at J.B.'s discretion.

A hearing regarding William's August 2023 request took place over several days between July 2024 and December 2024. On William's motion, the trial court dismissed the domestic violence temporary restraining order (TRO).[2] The court admitted into evidence Ann's declarations containing her recitation of the July 2023 incident and experiences with William. Pursuant to her counsel's request, and based on local court rules, the court struck her declarations that exceeded 10 pages. In the pages the court admitted, Ann expressed concern that J.B.'s abusive treatment was the result of William's influence — that he abused, harassed, and threatened her for years. She declared that, William refused to allow J.B. to see her ailing dog before it was

_____

[2] Court minutes refer to William's request for a TRO against Ann in November 2023, but the record does not contain that request or the order the trial court issued.

4

euthanized.  In another incident, William became upset and threatening when she attended J.B.'s school play and volunteered at the school.  She also relayed allegations that in prior years, J.B.'s mental health deteriorated to the point of having anxiety, panic attacks, and suicidal ideation while in William's care.  At the hearing, she testified she did not have any substance-related issues or mental health diagnoses.

The parties agreed J.B. would testify in chambers with only his counsel and the judge present.  In chambers, J.B. presented his account of the events in July 2023 — that he got into a dispute with Ann, who then yelled and took away his electronics.  He decided he needed to leave before the dispute escalated further.  He grabbed his phone, went to his room, and tried to call William.  Ann entered his room and attempted to grab his phone because she did not want him to leave.  He managed to grab her phone as well.  At that point, Ann bit his hand, and he held her around her collarbone and throat.  He ran out of the house and took a picture of the bite mark — Ann followed.  They eventually returned to the house and calmed down.  J.B. went to William's house the next day, disclosed the incident, and showed him the bite mark.

J.B. also discussed his preference to continue living with William while having visitation with Ann — two weekends each month — because he loved her.  Ann had moved temporarily to Orange County after the temporary custody order issued and, while he had no preference of where the visits with her would take place, he wanted to maintain his social life in Napa.  He expressed a desire to visit Ann more often if she returned to Napa County.  For legal custody, J.B. requested William make all the decisions because his parents generally have disagreements when they attempted to make joint decisions, such as which high school he would attend.

5

The trial court found J.B. — and not Ann — credible regarding the July 2023 incident. On that basis, it applied the section 3044 presumption against Ann. Thus, it awarded sole legal and physical custody to William, concluding she had not overcome the presumption. The court also found J.B. was of a sufficient age and capacity to reason and form intelligent preferences on custody and visitation. Awarding William custody, the court noted, would reduce conflict between the parents and was in J.B.'s best interests.

Upon Ann's request, the trial court issued a statement of decision — discussed further below — reiterating these findings.

## DISCUSSION

Courts must make custody decisions based primarily on the child's best interests. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955.) They generally favor maintaining custody arrangements to ensure stability and continuity because harm " 'may result from disruption of established patterns of care and emotional bonds with the primary caretaker.' " (*Id.* at p. 956.) Where a court has entered a final custody order, custody modification is only appropriate if a party demonstrates a significant change of circumstances "indicating that a different custody arrangement would be in the child's best interest." (*Ibid.*; *In re Marriage of Burgess* (1966) 13 Cal.4th 25, 32–33.)

The Legislature determined that "the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child." (§ 3020, subd. (a).) Thus, section 3044 creates a rebuttable presumption that awarding sole or joint physical or legal custody to a parent who has perpetrated domestic violence against the child within the previous five years is not in the child's best interests. (§ 3044, subd. (a).) This presumption "does not change the best interest test,

6

nor supplant other Family Code provisions governing custody proceedings." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055.) Rather, the "presumption may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent." (*Ibid*.)

Ann challenges the custody order on numerous bases, variously arguing the trial court erred by applying section 3044 presumption against awarding her custody, applied incorrect legal standards when granting William sole custody, and engaged in improper procedures. We review custody and visitation orders for an abuse of discretion — that is, whether there is no reasonable basis to conclude the decision was in the child's best interests — and the court's factual findings for substantial evidence. (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.) We independently review issues of statutory interpretation. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) Having engaged in this review, we conclude none of her arguments warrant reversal.

I.

Ann contends there is insufficient evidence supporting the finding she perpetrated domestic violence — "intentionally or recklessly caused or attempted to cause bodily injury" or placing "a person in reasonable apprehension of imminent serious bodily injury to that person" — to trigger the section 3044 presumption. (§ 3044, subd. (c).) She further maintains she could overcome the presumption. We disagree as to both points.

Focusing on J.B.'s testimony regarding the July 2023 incident, the trial court found credible his account that Ann bit him on the hand. This testimony alone constitutes substantial evidence in support of its finding. (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 823 [testimony from a single

7

witness may constitute substantial evidence].) It further rejected Ann's declaration that her act was in self-defense — in response to J.B., who was six feet tall, pinning her down on his bed and choking her. We defer to the court's credibility determination because, " 'having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, [it] is best qualified to pass upon and determine the factual issues presented by their testimony.' " (*In re Marriage of Lewin* (1986) 186 Cal.App.3d 1482, 1492.)

Relying on *In re B.H.* (2024) 103 Cal.App.5th at page 469 — noting that a past incident of domestic violence alone is insufficient to support a finding that a child is within the juvenile court's jurisdiction in a juvenile dependency case under Welfare and Institutions Code section 300 — Ann insists the trial court improperly relied on the dismissed TRO to establish a finding of domestic violence. (*In re B.H.*, at p. 482.) Her reliance on that case is misplaced. There is no juvenile dependency proceeding here. More importantly, the section 3044 presumption applies "whenever there is a finding that one parent committed an act of domestic violence" against a child. (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1499 (*Fajota*); § 3044, subd. (c); *Noble v. Superior Court* (2021) 71 Cal.App.5th 567, 576.) "Whether a restraining order is issued as a result of the domestic violence . . . has no bearing on the applicability of the statutory presumption to the issue of custody." (*Fajota*, at p. 1499.) The record demonstrates the court focused on the events of July 2023, not the fact that it issued a TRO. Substantial evidence supports the finding Ann perpetrated an act of domestic violence against her son.

Ann alternately insists we must reverse the order because she could overcome the section 3044 presumption. After a court finding that the party

8

has perpetrated domestic violence, the party may overcome the presumption by demonstrating by a preponderance of the evidence that giving sole or joint physical and legal custody of the child to the perpetrator is in the child's best interests. (§ 3044, subds. (a)–(b)(1).) The statute further articulates a list of factors the court must consider. (*Id.* subd. (b)[3], § 3020.) Substantial evidence supports the trial court's conclusion that Ann did not demonstrate that awarding her joint legal and physical custody was in J.B.'s best interests. (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.)

When making this determination, the trial court highlighted Ann's emotional instability as displayed by the July 2023 incident. (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at p. 956 [courts may consider the child's health, safety, and welfare, and any history of abuse by one parent against any child when determining the best interests of the child].) Ann clawed and screamed at her 12-year-old son while trying to grab his phone. J.B. disclosed suffering more emotional, rather than physical, damage from this

---

[3] The court may consider and balance the following factors:

"(A) The perpetrator has successfully completed a batterer's treatment program . . . .

"(B) The perpetrator has successfully completed a program of alcohol or drug abuse counseling, if the court determines that counseling is appropriate.

"(C) The perpetrator has successfully completed a parenting class, if the court determines the class to be appropriate.

"(D) The perpetrator is on probation or parole, and has or has not complied with the terms and conditions of probation or parole.

"(E) The perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions.

"(F) The perpetrator of domestic violence has committed further acts of domestic violence.

"(G) The court has determined . . . that the perpetrator is a restrained person in possession or control of a firearm or ammunition in violation of Section 6389 . . . ." (§ 3044, subd. (b).)

incident. Rather than accept responsibility, Ann minimized her role by blaming J.B. and testified she bit him in self-defense.[4] According to J.B., she threatened to move away if he told anyone about the incident.

In contrast, J.B. appeared to be doing well in William's physical custody. (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at p. 956 [considering nature and amount of child's contact with parents when considering child's best interests].) As required by statute, the trial court considered and gave due weight — not controlling weight, as Ann suggests — to J.B.'s wishes after finding he was of a sufficient age and had the capacity to reason and form intelligent preferences on custody and visitation. (§ 3042, subds. (a), (c) [authorizing a child 14 years old or older to address the court regarding custody or visitation unless the court determines it is not in the child's best interests]; *In re Marriage of C.T. & R.B.* (2019) 33 Cal.App.5th 87, 108.) Those wishes included continuing bimonthly visitation with Ann because he loved her while continuing to live with William, who would have full legal custody. He believed joint legal custody resulted in more arguments and caused him stress. He also noted being inclined to seeing Ann more often if she moved back to Napa. The court further found the level of conflict between the parents made joint legal custody impractical and difficult for everyone involved. Granting William sole legal custody, the court explained, would promote stability in J.B.'s life, and it was in his best interests to continue living primarily with William.

---

[4] In a supplemental declaration, Ann later stated she took responsibility for the July 2023 incident and did not blame J.B. But she again recited her version of the events —that he choked her in response to her attempt to take his cell phone. She further claimed he was coached by his counsel and father to recount a different version of the event.

10

None of Ann's arguments establish that she could overcome the presumption — that awarding *her* sole physical or legal custody was in J.B.'s best interest. (*Keith R. v. Superior Court, supra,* 174 Cal.App.4th at p. 1054 ["a domestic violence finding in a family law case" "does not limit the evidence cognizable by the court, and it does not eliminate the best interest requirement"].) First, relying on a series of photos of her and J.B. together, Ann asserts she has a close bond with him, and he consistently seeks more time with her. But a perpetrator of domestic violence cannot rely on the policy "preference for frequent and continuing contact with both parents" to rebut the presumption. (§§ 3044, subd. (b)(1), 3040, subd. (a)(1); *Jason P. v. Danielle S.* (2017) 9 Cal.App.5th 1000, 1033.)

Next, she asserts that she is "extremely sensitive and informed about domestic violence." Ann forfeits this argument because this statement, without citation to the record, fails to provide any analysis of whether granting her custody is in J.B.'s best interests. (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 736 [once § 3044 presumption is triggered, burden of persuasion shifts to parent who committed domestic violence]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [contentions on appeal forfeited if "no citation 'is furnished on a particular point' "]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) Finally, Ann's focus on the remaining factors for rebutting the presumption — stating that there is no recommendation she receive batterer's treatment, her completion of Soberlink testing, there was no court-ordered parenting classes, she completed driving under the influence probation, and she had no restraining orders or committed any other acts of domestic violence — to suggest that, on balance, joint custody is appropriate here does not satisfy her burden of demonstrating *best interests*. While the court "must *consider*" seven factors

11

before finding the presumption has been overcome, here the court did not find she had overcome the presumption.

Omitting Ann's various complaints about William's parenting did not render the trial court's analysis of J.B.'s best interests deficient, contrary to her assertions. These complaints include William's choice of J.B.'s school and therapists, his denial about J.B.'s alleged suicidal ideation, J.B.'s poor grades when in his care, and his refusal to obtain orthodontic care for J.B. Leaving aside Ann's failure to cite to the record to support these assertions, she ignores the standard of review. (*Guthrey v. State of California*, *supra*, 63 Cal.App.4th at p. 1115.) When reviewing the record for substantial evidence, we accept all evidence supporting the court's decision, drawing all reasonable inferences from the evidence to support the finding. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581–582.) That there may be evidence that contradicts the finding does not warrant reversal — we only determine "if substantial evidence exists to support [the finding] in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Id.* at p. 582.)

To the extent Ann contends the trial court's analysis ignored William's interference with her visitation rights and his alleged history of domestic violence, her failure to provide analysis or citation to the record forfeits that argument on appeal. (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830.) Though we are sympathetic to Ann's status as a self-represented litigant and an alleged victim of domestic violence, she is not exempt from appellate procedure rules or relieved from her obligation to present arguments supported by the record and legal authority. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

On this record, the trial court could reasonably conclude Ann had not overcome the section 3044 presumption and that awarding William sole legal and physical custody was in J.B.'s best interests.

II.

Ann contends we must reverse the custody order because the trial court's statement of decision contains several deficiencies. She faults the court for failing to address all 11 issues in her request for a statement of decision — including identifying the extent to which the court considered recommendations from J.B.'s counsel, the basis for awarding legal and physical custody to each parent, the court's findings of a change in circumstances to modify the 2018 custody order, the emotional stability of each parent, J.B.'s preferences for legal and physical custody, and the basis for its orders regarding the payment of fees to J.B.'s counsel. She also contends the court was required but failed to assess whether there was a significant change in circumstances before awarding William sole custody. We discern no error.

Courts must provide a statement of decision explaining the factual and legal basis for their custody decisions upon a proper, timely request. (§ 3022.3; Code Civ. Proc., § 632; *Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1397.) The request must "specify those controverted issues as to which the party is requesting a statement of decision." (Code Civ. Proc., § 632.) There is no requirement that the court "address each question listed" in the request. (*Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1130.) It must simply explain "the factual and legal basis for the court's decision regarding such principal controverted issues at trial as are listed in the request." (*Ibid.*)

13

As a preliminary matter, reversal is unwarranted because the trial court *did* issue a statement of decision. (*Miramar Hotel Corp. v. Frank B. Hall & Co., supra,* 163 Cal.App.3d at p. 1129 [reversal required where court fails to issue a statement of decision despite a timely request].) More importantly, the statement of decision adequately addressed the principal controverted issues — the finding of domestic violence and physical and legal custody. It found William was a good parent, J.B. was doing very well in his custody, and J.B. preferred to remain in his care. It found that granting William sole legal custody was in J.B.'s best interest and would promote stability and peace in his life given the level of conflict between the parents. In contrast, the court explained, Ann demonstrated emotional instability as reflected by the July 2023 incident. As requested, the order also made specific findings regarding this incident and obeyed the section 3044 presumption as the basis for awarding William sole physical and legal custody. It also reserved decision on the issue of fees for J.B.'s counsel. To the extent the statement of decision did not examine the influence of J.B.'s counsel over the trial court's decision, this was not a principal controverted issue warranting discussion.

When there is a "final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child," "custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest." (*In re Marriage of Brown & Yana, supra,* 37 Cal.4th at p. 956.) Here, however, there was a finding Ann perpetrated domestic violence, triggering the presumption against awarding her sole or joint custody. In those circumstances, the court would have abused its discretion by leaving in place

14

an earlier order awarding both parents joint physical and legal custody. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 664 [remanding for a determination of whether father overcame the § 3044 presumption].)  In any event, the court noted that, given all these facts and circumstances, it would have ordered J.B. to live with William even if it had not found true the allegation that Ann engaged in domestic violence.  The statement of decision thus properly explained the bases for the court's decision.

III.

Ann contends we must reverse the custody order because the trial court made several procedural and legal errors when imposing the section 3044 presumption.  We disagree.

First, she suggests the trial court was required, but failed, to provide her a copy of section 3044 before finding the presumption applied.  After independently reviewing the statute, we conclude this argument misreads the statute.  (*People ex rel. Lockyer v. Shamrock Foods Co.*, *supra*, 24 Cal.4th at p. 432.)  Section 3044 provides that in any custody proceeding "in which a party has alleged that the other party has perpetrated domestic violence," "the court shall inform the parties of the existence of this section and shall give them a copy of this section prior to any custody mediation in the case." (*Id.*, subd. (h).)  Thus, parties "*in custody mediations*" must be informed about section 3044.  (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 825.)  Ann does not assert the parties were participating in custody mediation, and nothing in the statute required the court to inform parties regarding the applicability of the domestic violence presumption in the absence of mediation.  (*Ibid.*)

Next, Ann contends the trial court improperly raised the section 3044 presumption after the close of evidence without providing her an opportunity to rebut the presumption.  Not so.  The court "*must* apply the presumption

15

in any situation in which a finding of domestic violence has been made"
and a party seeks a change or modification of custody. (*Fajota*, *supra*,
230 Cal.App.4th at p. 1498; *Noble v. Superior Court*, *supra*, 71 Cal.App.5th
at p. 580.) William requested sole legal and physical custody based on
allegations Ann physically abused J.B. The court held a hearing during
which J.B. and the parties testified. The record reflects the court repeatedly
attempted to focus Ann's testimony on William's August 2023 request for a
change in custody based on the July 2023 incident. After hearing arguments
from all parties, it found Ann perpetrated an act of domestic violence against
J.B. before awarding sole custody to William. (§ 3044, subd. (g) ["In an
evidentiary hearing or trial in which custody orders are sought and where
there has been an allegation of domestic violence, the court shall make a
determination as to whether [§ 3044] applies prior to issuing a custody
order"].) Under these circumstances, applying the section 3044 presumption
was mandatory. (*Fajota*, at pp. 1499–1500 [failure to apply the mandatory
presumption in § 3044 where the court found a parent had previously
engaged in domestic violence against the other parent constitutes an abuse of
discretion].) The court had no discretion to not apply the presumption.
(*Celia S. v. Hugo H.*, *supra*, 3 Cal.App.5th at p. 664.)

Ann's remaining arguments are forfeited.[5] She insists the trial court
violated her due process rights by failing to consider all the relevant evidence
when assessing J.B.'s best interests. But after articulating broad procedural

---

[5] Ann's notice of appeal indicates she appealed from the denial of her
motion for a new trial and to set aside the judgment, but she does not make
any arguments challenging those orders. We deem the appeal of these issues
abandoned. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119–1120 [court
not required to "consider alleged error where the appellant merely complains
of it without pertinent argument"].)

due process principles, such as the right to proffer admissible evidence and the right to a neutral factfinder, she simply states "Minor's Counsel never struck Father's briefs based upon page limits or local rules." This assertion of error, unaccompanied by a reasoned argument explaining how the court erred with regard to Ann, fails to demonstrate any violation of her due process rights. To the extent she takes issue with the court striking portions of her declarations in response to the request for a change in custody, her counsel expressly agreed to strike the declarations that exceeded 10 pages to comply with local court rules. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212–213 [party precluded from making claim on appeal when its own conduct induced commission of error].) The same is true for her various arguments seeking the appointment of a special master pursuant to a prior stipulation and her request that William pay all the outstanding fees for J.B.'s counsel. She fails to provide any legal authority or analysis regarding our power to enforce the stipulation or make an order regarding fees. "Conclusory assertions of error are ineffective in raising issues on appeal." (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523.) "We are not bound to develop [Ann's] arguments for" her, and we treat these contentions as forfeited. (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830.)

Likewise, we do not consider arguments raised for the first time on appeal. (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755 [failure to raise an objection below forfeits the issue for review on appeal].) She contends the trial court improperly interviewed J.B. in chambers without her counsel present. The record, however, reflects she agreed to these interview conditions. The court asked, "Does anyone have an objection to me talking to [J.B.], essentially in chambers . . . with [minor's counsel] present, without Mr.

17

B[.], Ms. R[.], or [Ann's counsel] present." Ann's counsel stated there was "[n]o objection." Similarly, Ann cannot argue that J.B.'s counsel must be removed because she exceeded her authority by acting as a custody evaluator. She withdrew her request to remove J.B.'s counsel below.

## DISPOSITION

The order is affirmed.[6] Because William did not file a respondent's brief, we do not award costs on appeal in the interest of justice. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[6] In light of this conclusion, we do not consider Ann's argument the case should be remanded to Orange County Superior Court.

18

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.

A172909; *B. v. R.*