Filed 2/26/13  Marriage of Bischler CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of STACIA M. and NEIL E. BISCHLER. | |
| | D061894 |
| STACIA M. BISCHLER, | |
| Respondent, | (Super. Ct. No. D475533) |
| v. | |
| NEIL E. BISCHLER, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

Neil Bischler appeals from an order denying his motion to modify a child custody order and allow his children to move from San Diego County to live with him in Illinois. He argues the trial court (1) abused its discretion by failing to consider or make express findings on various issues and making several improper findings and (2) violated his due process rights by prejudging the case.  We reject these contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Neil Bischler (Father) and Stacia Bischler (Mother) separated in 2000 and were divorced in 2003.[1]  In a final custody order, Mother was given physical custody of their three children and Father was given visitation.  The children have resided primarily with Mother since the parties' separation in May 2000, and have stayed with Father in his home in Illinois during school breaks.

On August 5, 2011 (when the children were ages 17, 13, and 12), Father filed a motion to modify the child custody order.  Father requested that the court change the order to award him physical custody of the three children and allow the children to live with him and his current wife and her children in Illinois.  Father alleged that Mother was neglecting the children; the children were in an unstable living situation and were suffering emotionally and academically; and it was in the children's best interests to reside with him.

The hearing on Father's motion was held on January 12, 2012.  Both parties were represented by counsel; Mother appeared and Father was available telephonically.  By the time of the hearing, the parties' eldest child was 18 years old and accordingly she was no longer part of the custody proceedings.  The other two children were ages 14 and 13.  The court was presented with declarations from Father and several other individuals in

---

1      Mother did not file a respondent's brief in the current appeal, and the appellate record designated by Father is sparse.  To assist with our evaluation of Father's contentions, we have taken judicial notice of the superior court file and have reviewed it. (Evid. Code, § 452, subd. (d).)

support of Father; testimony from Mother; testimony from the parties' 14-year-old son (Son); and a report and testimony from a Family Court Services (FCS) counselor.

In his declaration Father stated that he has had little contact with Mother because she instructs the children to contact him on her behalf. Since December 2008, Mother and the children had been living with Mother's parents (the grandparents). Father had earlier learned that the children's uncle, who also lived at the residence, might be using drugs. Father also said that Mother had moved out of the grandparent's residence without the children to live with her boyfriend; she only saw the children about every other weekend; and the children felt Mother had abandoned them. He claimed Mother was neglecting the children by failing to provide them with supervision and emotional and financial support.[2]

Father stated the children's living situation was causing them to suffer emotional distress, which was reflected in their failing grades at school and in their engagement in altercations and aggressive behavior at school and home. He presented evidence that during the previous school year all three children had failing grades, and Son was placed on an Individual Educational Plan (IEP) and Mother had not notified Father of this.

Father also submitted declarations from individuals who attested to Father's close, positive relationship with his children; his attention to their needs; and his loving, stable

---

[2]    To corroborate his claims, Father submitted a declaration from a family member (apparently related to Father) who stated the children had told her about their unhappiness with their current living situation, including that they felt abandoned by Mother; Mother had not been living with them at the grandparents' home for over a year; Mother at most visited them one time per month; and they were concerned about the uncle living at the home who was using and selling drugs.

home environment. He proposed that the parenting plan be reversed so that the children would reside primarily with him and would visit Mother during school breaks.

Responding to Father's claims, Mother denied that she moved in with her boyfriend and left the children to live with her parents. Mother stated that she and the children lived with her parents for almost three years. Mother had no knowledge or suspicion that her brother was using drugs. On some weekends Mother stayed at her boyfriend's home, and the children usually came with her unless she and her boyfriend were going out of town. She never moved in with her boyfriend and all of her belongings remained at her parents' home. Mother and her boyfriend had now purchased a home, and they were living there with Mother's children and the boyfriend's children. Mother stated that Father's claim that the children felt abandoned by her was "pure fabrication."

Mother acknowledged the children had failed classes during the previous school year, but stated their academic performance had improved during the current school year. The older daughter was going to graduate from high school in June, and the younger daughter was getting A's and B's and maybe one C. Son has a processing deficit and focusing problem that have been addressed through an IEP; he is receiving after-school tutoring; Mother works with him constantly to help him with his studies; and she pressures him to do his homework and to get at least C's. Mother did not tell Father about Son's IEP because Father had never participated in decisions about the children. Mother believes Son's maturity level is below his age level; i.e., at the level of an 11- or 12-year-old. Mother stated she and her boyfriend provide a stable, enjoyable home

4

environment for the children. She denied that the children were aggressive or getting into altercations.[3]

Mother testified that Father is a long haul truck driver, which requires him to travel long distances and causes him not to be home three to four or more nights per week. Father told the FCS counselor that he is on the road about 25 days each month for five days at a time; however, when the children are in his care he does not travel outside the county and is home every evening.

Son testified that he had a good relationship with his father, he talked to him regularly, and they had a good summer visitation. Son testified he wanted to live with Father, explaining that he did not remember having a birthday or Thanksgiving with Father. He stated he would miss his sisters if they stayed in California. Regarding his grades, Son testified that the last school year he failed all of his classes. However, he had now changed schools; he was receiving after-school tutoring; his grades were improving; and Mother helped him with his school work and pressured him to get it done.

The FCS counselor recommended no change in the custody order. The counselor conducted a conference with both parents in November 2011, with Father participating telephonically. The counselor reviewed the information provided by the parties, including the children's living arrangements with Mother, and recommended that Mother continue to provide the primary residence. The counselor took into consideration the children's ages, the parenting schedule practiced by the parties, the fact Mother has been

---

[3] Mother stated there was one incident when Son pushed another student when he was in sixth grade, and he is now in eighth grade.

the primary care provider for the children since the parents separated in 2000, and the absence of any information from Father that would warrant a change in custody. The counselor did not personally interview the children. When queried about this at the hearing, the counselor explained that no one requested that the children be interviewed about their preferences, and unless there were safety concerns it was not her practice to interview children. The counselor also recommended that Mother be ordered to send to Father on a monthly basis documents related to the children's health and school performance, including report cards and parent-teacher conference reports.

The trial court denied Father's move-away request and adopted the FCS counselor's recommendations, including regarding the ongoing transmission of school documents by Mother to Father. When making its oral ruling at the hearing, the court commented that Mother had intervened with the children's academic problems and their grades were improving; Father had not presented any evidence about what school the children would attend or what resources would be available in Illinois; and Father had not presented evidence about whether he was "going to be around." The court also stated that it was undisputed that Son expressed a preference to live with Father, and the court took this preference into account. However, the court stated it did not "find there was a whole lot behind the preference," and Son's expressed preference was outweighed by the fact that if he was sent to Illinois, the siblings would be separated.

DISCUSSION

## I. *Contention that Trial Court Abused Its Discretion*

Father argues the trial court abused its discretion in denying his move-away request because it failed to mention or make findings concerning a variety of relevant evidentiary items and factors. He contends the court failed to make findings on such matters as the instability reflected in the children's failing grades and Mother's leaving the children in the care of the grandparents; the FCS counselor's failure to interview the children; and the fact that Mother used the children to communicate with Father and failed to inform Father about Son's IEP.

Preliminarily, we note that when it made its oral ruling, the trial court expressly referred to the issue of the children's grades and set forth its consideration of this matter. In any event, to the extent the court did not address the other matters raised by Father on appeal, he has not shown error in this regard. If a party wants the trial court to make explicit findings on particular issues, he or she must request a statement of decision on these issues. (Fam. Code, § 3022.3; *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1274; Hogoboom & King, Cal. Practice Guide, Family Law (2012 Rutter Group) ¶ 17-405, p. 17-102.)[4] A party's failure to request a statement of decision generally forfeits an appellate challenge based on the lack of express findings. (*In re Marriage of Ditto*

---

[4] Subsequent unspecified statutory references are to the Family Code. Section 3022.3 states: "Upon a trial of a question of fact in a proceeding to determine the custody of a minor child, the court shall, upon the request of either party, issue a statement of the decision explaining the factual and legal basis for its decision pursuant to Section 632 of the Code of Civil Procedure."

7

(1988) 206 Cal.App.3d 643, 647; see *In Marriage of Hebbring, supra*, 207 Cal.App.3d at p. 1274.) Absent a request for specific findings, it will be presumed on appeal that the trial court found all facts necessary to support the judgment. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1093; *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1219; *In re Marriage of Hebbring, supra*, 207 Cal.App.3d at p. 1274.)

After the trial court made its oral ruling denying Father's move-away request, the court directed Father to prepare the court's order. Father agreed to do so, and Father prepared a written order denying the move-away request in general terms. Father never requested specific findings on an issue and never requested a statement of decision. Under these circumstances, Father has not shown the trial court abused its discretion by failing to make findings on any particular points now raised by Father on appeal.

Father also raises several challenges that essentially attack the court's ruling on its merits. Father asserts the court erroneously found that if it granted the move-away request based on Son's testimony that he wanted to live with Father, it would have to split up the siblings. Father contends this reasoning was improper because Father had requested that all three children move with him, and the court erroneously "assumed the [move-away] request was for just one child."

Contrary to Father's assertion, the record shows the court understood the move-away request was for all the children. The materials provided to the court (including Father's order to show cause, Mother's opposition pleadings, and the FCS counselor's report) refer to the parties' three children, state that Father was requesting physical custody of the children, and say nothing to suggest that Father was requesting physical

8

custody only of Son. We presume the court read and understood these materials. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].) At the hearing Father's counsel told the court that Father wanted "the two remaining minor children" to be in Father's primary care and with school-break visitation to Mother. When ruling to adopt the FCS counselor's recommendations, the court stated that it was excluding the older daughter because she was now 18 years old. The court's written order after the hearing states, "The Court denies Respondent's request to have the children move to Illinois." There is nothing in the record to support Father's contention that the court thought Father was solely seeking physical custody of Son.

Further, absent a showing that the other two children would or should go to live with Father, the trial court could properly consider that an order granting Son's preference would separate the siblings. There was no evidence indicating that the older daughter (an adult at the time of the move-away hearing) intended to elect to live with Father. As to the younger daughter, the record supports the court's ruling that the custody order should not be changed to require her to move to Illinois. When a noncustodial parent seeks to change a permanent physical custody order, "the noncustodial parent has a substantial burden to show that ' "some significant change in circumstances indicates that a different arrangement would be in the child's best interest.". . .' " (*In re Marriage of LaMusga, supra*, 32 Cal.4th at p. 1088; *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956.) Absent such a showing, the court " 'should preserve the established mode of custody' " so as to " 'protect[] stable custody arrangements.' " (*LaMusga, supra,* at p. 1088.)

Father's request for a change in custody was primarily premised on Mother's failure to live with the children at the grandparents' home and the children's failing grades. Mother presented evidence showing that she never left the children to live with her boyfriend; the children were currently living with her in a home she has purchased with her boyfriend; and the children's academic situation is being addressed and has improved. The trial court was entitled to credit this information and to reject Father's assertion that it was in the children's best interests to change the long-standing physical custody arrangement.

Father also contends the court erroneously found there was no evidence he would be able to care for the children due to his work schedule. He contends he and his wife submitted declarations "stating otherwise[,]" and Mother did not provide any evidence indicating his work schedule would make him unable to care for the children. We presume Father is referring to the trial court's comment at the hearing that Father did not show whether he was "going to be around," which appears to be a reference to Father's absence from his home due to his truck-driving job. Father has not cited to any evidence (in the declarations he submitted or otherwise) specifically showing how the children would be cared for in Illinois.

In any event, even assuming arguendo there was no basis for the trial court to infer Father would not be able to provide proper care for the children if they resided primarily with him, the court's comment about Father's absence from the home does not show it abused its discretion in denying the move-away request. Father was seeking to significantly alter the custodial arrangement that had been in place for almost 12 years,

10

and he bore a substantial burden to justify this change. We will not upset the trial court's discretionary ruling on this issue unless "there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child." (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610.)

As set forth above, the court's decision was supported by the showing that the children were now living on a full-time basis with Mother in their own home and their academic needs were being addressed. Further, the court properly considered Son's preference to live with Father (§ 3042), and could reasonably reject Son's request given Mother's testimony about his level of maturity, the existing IEP addressing his special academic needs in the current placement and the lack of evidence concerning resources available in Illinois, and the bond between Son and his two sisters who would not be moving to Illinois.[5] The court reasonably found there were no changed circumstances warranting a change in the custody order, and we are satisfied the court would have reached the same conclusion even if it had not considered Father's absence from the home due to work obligations. (See *People v. Price* (1991) 1 Cal.4th 324, 492 [reversal

---

[5] Section 3042, subdivision (a) states: "If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation, the court shall consider, and give due weight to, the wishes of the child in making an order granting or modifying custody or visitation."

The section also provides that a child 14 years of age or older should be permitted to testify unless the court finds it is not in the child's best interests; younger children may be permitted to address the court if appropriate; if a child is precluded from testifying the court should provide alternative means of obtaining input from the child; and a child is not required to express a preference or provide input. (§ 3042, subds. (c)-(e), (g).)

This provision does not require the court to accede to a child's preference, but only requires the court to consider it and give it due weight. (*In re Marriage of Mehlmauer* (1976) 60 Cal.App.3d 104, 110.)

not warranted absent reasonable probability court would have reached different result had it realized one of its reasons was erroneous]; see generally *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078.)

II. *Contention that Trial Court Prejudged the Case and Denied a Full Hearing*

Father argues his due process rights were violated because prior to the conclusion of his case, the trial court prejudged and decided the move-away issue and dissuaded his counsel from fully presenting his case. In support, he cites a comment by the trial court during his counsel's closing argument where the court stated: "I think it's pretty clear-cut on the move-away." According to Father, his counsel then rested his case without finishing the closing argument because it was apparent the court had already decided the move-away issue.

Father's contention that the trial court prejudged the move-away issue and caused his counsel to prematurely rest his case is speculative. Before making the comment that the move-away issue was "pretty clear-cut" the court summarized the evidence that it viewed as supporting this conclusion. Thus, it is apparent the court's statement about its assessment of the issue was based on the *evidence*, not on a prejudgment independent of the evidence. Further, although Father's counsel's closing argument was short and he rested his case immediately after the court stated its view on the merits, there is nothing

in the record suggesting the court would have prevented further argument had counsel wished to continue.[6]

Father has not shown the trial court violated his due process rights.

DISPOSITION

The order is affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

---

[6]     The colloquy between Father's counsel and the court was as follows:  "[Father's counsel]:  . . . With regards to the move-away . . . my client has provided evidence as to a substantial change in circumstances, namely, the drop in the children's grades.  Granted, they may be going up but all we have is Mother's testimony.  [¶]  The Court:  And the child's testimony.  And nothing on the other side.  I have no reason to disbelieve that.  They both say Mother was intervening and got tutoring and things are better.  And we have nothing on the other side what will happen when they get to Illinois.  What school they will go to.  What resources are there going to be.  Is Dad going to be around.  All of those things.  I think it's pretty clear-cut on the move-away.  [¶]  [Father's counsel]:  I rest.  [¶]  The Court:  Okay."

13