Filed 2/16/16  Stovall v. Cox CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEANNA STOVALL,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KIERAN A. COX,<br><br>Defendant and Respondent. | A144769<br><br>(Alameda County<br>Super. Ct. No. AF12639961) |

Appellant Jeanna Stovall, appearing in propria persona, appeals from an order awarding her and respondent Kieran A. Cox joint physical and legal custody of their now four-year-old son and denying Stovall's request to move to Illinois with the child. She contends the court abused its discretion in determining that the custody order was in the child's best interest. Cox has not filed an appellate brief. We find no error and shall affirm the court's order.

**Factual and Procedural Background**

In July 2012, Stovall filed a petition to establish that Cox was the father of her son. In January 2013, the court found that Cox is the child's father and ordered supervised visitation. Thereafter, the court issued an order setting Cox's child support at $1,577 per month and his share of the child care costs at $744 per month. In a prior opinion, this court found that the trial court had abused its discretion in calculating Cox's income and remanded for recalculation. (*Stovall v. Cox* (Nov. 24, 2014, A140942) [nonpub. opn.].)

While the child support order was pending on appeal, the issues of custody, timeshare and Stovall's request to move to Illinois were tried before the court. Following

1

six days of trial, the court issued a final custody order awarding Stovall and Cox joint physical and legal custody of their son and denying Stovall's request to move permanently with the child to Illinois. The trial court concluded that shared custody of the child in California was in the child's best interests. The court found that both parents had a close relationship with their son and that "each parent has strengths and weaknesses and each parent has parenting traits that will benefit [the child]." The court also found that the child had extended family in both California and Illinois, but that his ties to his family in California, and his paternal grandmother in particular, were stronger.

Stovall filed a timely notice of appeal.[1]

### Discussion

"California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code[2] . . . . Under this scheme, 'the overarching concern is the best interest of the child.' [Citation.] For purposes of an initial custody determination, section 3040, subdivision (b), affords the trial court and the family ' "the widest discretion to choose a parenting plan that is in the best interest of the child." ' [Citation.] When the parents are unable to agree on a custody arrangement, the court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956.) On appeal, custody orders are reviewed for an abuse of discretion, and the trial court's factual findings are reviewed under the substantial evidence standard. (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.)

The record in this case provides ample support for the court's factual findings and these findings, in turn, support the court's exercise of discretion in ordering joint

---

[1] Stovall's request for judicial notice of a transcript of a hearing occurring after the filing of the notice of appeal and the findings and order entered following the hearing is denied.

[2] All statutory references are to the Family Code unless otherwise noted.

2

custody of the child and requiring that the child remain in California. Stovall's arguments to the contrary are not persuasive.

Stovall notes correctly that the trial court found that Cox had unreasonably and intentionally missed visits with his son "in order to prove a point in this ongoing legal battle." The court cited testimony that Stovall had requested that the time of Cox's visits be modified from 5:00 p.m. to 5:30 p.m. to accommodate her work schedule, but that Cox refused to cooperate and would arrive at 5:00 p.m. and leave prior to 5:30 "knowing that [his son] was on his way . . . to visit him." The court explained that this behavior "exemplifies a lack of flexibility, stubbornness . . .and rigidity that are contrary to the best interests of [the child]." The court also found, however, that Stovall had similarly engaged in behavior that demonstrated her "lack[] of empathy and most importantly did not put the interests of [her child] above her personal agenda." The court cited, as an example, mother's ungrounded refusal to allow the paternal grandmother to supervise a visit between the child and Cox on Father's Day. Stovall cites the trial court's finding that Cox was responsible for frustrating her attempts to Skype with her son when the child was in California and she was in Illinois, but ignores the trial court's finding that both parties shared the blame for the utter failure of visitation between Cox and his son when the child was in Illinois with Stovall. Ultimately, the court observed that "[n]otwithstanding the court's belief that each party in this matter has the capacity to be a good, maybe even an excellent parent . . . , their inability to communicate as co-parents and their lack of ability and/or willingness to put [the child's] interests above their individual interests is very disturbing to the court. Unfortunately, each party is on a vendetta to destroy the other party and this vendetta has taken priority in this matter and had had a direct impact on the well-being of [their son.]" Given what appears to be shared responsibility for the inability to co-parent, the court did not abuse its discretion in ordering joint custody.

Stovall also faults the court for proceeding to trial without the benefit of an expert child custody evaluation. Under section 3111, subdivision (a), "In any contested proceeding involving child custody or visitation rights, the court may appoint a child

3

custody evaluator to conduct a child custody evaluation in cases where the court determines it is in the best interests of the child." The child custody evaluation under section 3111 "is an expert investigation and analysis of the health, safety, welfare, and best interest of children." (Cal. Rules of Court, rule 5.220(c)(3).) Among other things, it includes a meeting with each child and observations of parent-child interaction. (See Cal. Rules of Court, rule 5.220(d)(2)(C) & (e)(2)(B).) Although a family court *may* appoint a child custody evaluator, there is no authority requiring it to do so. (*Harris v. Harris* (1960) 186 Cal.App.2d 788, 801.)

In this case, an expert was designated by the court in June 2013 to conduct a custody evaluation and evaluate the move-away issue. In September 2013, an order was entered directing Cox's attorney to contact the expert and arrange for the evaluation before a hearing set for December 6. On December 6, 2013, the evaluation had not been conducted and the court set a hearing for March 31, 2014, to review the custody evaluation. The court also set a trial date for June 2, 2014. As of March 7, the custody evaluation still had not been completed. The parties were advised that the trial would take place as scheduled with or without the custody evaluation.[3] The trial court noted in its statement of decision that it "did not have the benefit of receiving evidence from the court appointed child custody evaluator . . . which hopefully would have provided more evidence to this court about the bond between [the child] and each of his parents and

---

[3] Stovall's suggestion that the court did not warn the parties they would proceed without an evaluation and to the contrary, stated that he "could not try [the] case without a custody evaluation" is based on a complete distortion of the transcript. While the trial judge did express his frustration that the custody evaluation had not been started and stated, "We're not going to have a trial in June if we don't have a custody evaluation," he also stated, "All I'm saying, we could have a trial without a custody evaluation, more than happy to have that. Do you want to do that? Come in June, put on your evidence, and I'll make the call." In any event, at the conclusion of the hearing, after lengthy arguments, the court clearly advised the parents that he was "hoping this evaluation gets done because we're going to go to trial in June, with or without it. This is a case that needs to get resolved." He then reiterated, "I'm maintaining my order that Dr. Roberto is the evaluator in this case. But I'm going to make it clear this case goes to trial in June, with or without the custody evaluation."

4

more evidence as to the special relationship that [the child] may have enjoyed with each of his parents."

Stovall was given more than adequate time to arrange for the custody evaluation prior to trial, but failed to do so. Although Cox undoubtedly shared responsibility for that failure, Stovall was responsible for marshalling her evidence and could have had her relationship with her son evaluated separate and apart from Cox. Moreover, it is unclear how the absence of the evaluation harmed Stovall. Although the court acknowledged that it received "limited evidence as to the relationships between [the child] and his mother" and that Stovall "was somewhat aloof in describing [her son] and very short on details and focus in describing her relationship with him," she was still awarded 50 percent custody. A glowing evaluation of her relationship with her child would not likely have altered the custody arrangement, considering the court also found that Cox has a strong bond with his son. Under these circumstances, the court did not abuse its discretion in proceeding to trial without an expert's opinion.

Next, Stovall contends the order must be reversed because Cox's custody of the child was not lawfully acquired. (See *Burchard v. Garay* (1986) 42 Cal.3d 531, 536 ["[I]n view of the child's interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change [in custody] is in the child's best interests."].) She argues, "Here there is evidence to support that the trial court judge made a hasty order allowing [Cox] to go to Illinois and take the child out of [Stovall's] custody for a period of 45 days, without speaking to [Stovall]. This was all done because [Cox] informed the trial court that [Stovall] had kidnapped his son and in essence fled to Illinois. However, none of that was true." She suggests that the court "used this 'stolen' time as a part of the time he considered during the issuance of his tentative decision that showed the bond between the child and his father." Again, Stovall's argument is based on a distortion of the record. The true facts are as follows:

On September 12, 2013, Stovall was given permission by the court to move temporarily to Illinois. Cox was provided visitation one weekend a month in California

5

and as frequently as possible in Illinois. On April 3, 2014, after months of failed attempts at visits between Cox and his son in California and the court's increasing frustration with the parents, the court issued an order clearly setting out the terms of visitation, including who should pay for which plane tickets. On April 17, after the scheduled visitation did not occur as result of another disagreement between the parents, Cox filed an ex parte application seeking primary physical custody of the child. On April 25, the court issued an order modifying custody and visitation. The court awarded Cox temporary physical custody of the child pending the hearing scheduled for May 20. On May 8, Cox apparently went to Illinois and took the child back to California. At the hearing on May 20, the court explained that temporary physical custody was transferred to the father because of the complete breakdown in visitation. The judge explained that with only 12 days until the start of the trial, he wanted the child to stay in California. Mother was welcome to visit in California as frequently as possible. Nowhere in the record did the court suggest that its order was based on Stovall's alleged kidnapping of the child and it does not appear that the court was operating under such impression.

Stovall also contends the court erred in finding that Cox had overcome the presumption against joint custody for perpetrators of domestic violence. Section 3044, subdivision (a) provides, "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child or against the child or the child's siblings within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence." In determining whether the presumption set forth in subdivision (a) has been overcome, the court shall consider, among other factors, "Whether the perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child." (§ 3044, subd. (b)(1).)

Here, the court found that a restraining order had been entered against Cox so that the section 3011 presumption applies, but that Cox had rebutted the presumption based on evidence that joint custody was in the child's best interest. The court explained that Cox "was a very active parent since the birth . . . having daily parenting responsibilities . . . up until the domestic violence incident," he and his son enjoy a "very strong and close bond" and that the child "will suffer emotional harm if he and [Cox] do not have significant custodial time with each other." The court described Cox as "a competent, loving and caring caretaker" who has "parental qualities that benefit" his son. The court also found that Cox had completed a 52-hour domestic violence class and a parenting class. We find no abuse of discretion in the trial court's finding that Cox had rebutted the section 3011 presumption.

**Disposition**

The order is affirmed.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Jenkins, J.