Filed 4/10/13  In re Marriage of Bettanini CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of SHANNON L. BETTANINI and ANTONIO J. BETTANINI. | |
| SHANNON L. BETTANINI,<br><br>    Appellant,<br><br>        v.<br><br>ANTONIO J. BETTANINI,<br><br>    Respondent. | F064508<br><br>(Super. Ct. No. FL5357)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kim M. Knowles, Temporary Judge.

Shannon L. Bettanini, in pro. per., for Appellant.

No appearance by Respondent.

-ooOoo-

In this family law dispute, Shannon Bettanini (Shannon)[1] appeals from the trial court's denial of her motion to modify the permanent child custody order that granted Shannon and her former husband, Antonio Bettanini (Antonio), joint legal and physical custody of their daughter, A.B. In seeking a modification, Shannon argued based on alleged safety concerns that the custody arrangement should be returned to what it was under the earlier custody order in which she had sole physical custody and Antonio only had brief periods of visitation. The trial court was not persuaded and denied Shannon's motion. This appeal followed.[2] Since Shannon has failed to demonstrate that the trial court abused its discretion, we affirm the judgment below.

## FACTS AND PROCEDURAL HISTORY

On April 12, 2005, after nearly ten years of marriage to Antonio, Shannon filed a petition for dissolution of the marriage. The parties' only child was their daughter, A.B., who was then two years of age. On October 12, 2005, following a hearing at which some evidence was presented, the trial court made several initial determinations (the 2005 custody order), including the following: "Mom has always been the primary caretaker of [A.B.] The Court finds that [A.B.'s] best interests would be served by awarding the parties *temporary* joint legal custody and by awarding Mom *temporary* physical custody. Dad shall have visitation with [A.B.] from Friday at 5:00 p.m. to Saturday at 5:00 p.m.

---

[1]    We use first names for convenience only; no disrespect is intended.

[2]    We note that Shannon filed an appellant's opening brief, but Antonio did not file a responsive brief. On September 6, 2012, Shannon filed a motion that we take judicial notice of certain documents or exhibits and/or that we make evidentiary findings. We deny the request for judicial notice since Shannon failed to adequately comply with California Rules of Court, rule 8.252(a)(2)(A) through (C). As to the request for evidentiary findings, our discretion under Code of Civil Procedure section 909 to make findings of fact on appeal "'should be exercised sparingly,'" and "'[a]bsent exceptional circumstances, no such findings should be made.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted.) No exceptional circumstances are present in this case to warrant evidentiary findings on appeal.

and telephone visits with her at 5:30 p.m. on Sunday, Tuesday and Thursday of each week. Dad's mother, Tamara Bettanini, shall be present in the home when [A.B.] is with Dad between the hours of 9:00 p.m. and 6:00 a.m.[3] The parties shall divide the four-day Thanksgiving weekend and the Christmas Eve/Christmas Day holiday evenly." (Italics added.)

Afterwards, the parties went through an extended period of time in which they were reconciled and were working on their marriage while maintaining separate residences. By mutual agreement, the dissolution proceedings were to remain "dormant" unless or until either party sought to reactivate them. In February 2010, Shannon decided to abandon the reconciliation efforts and proceed with the divorce. According to Antonio, during the reconciliation period, "[Shannon] and I were getting along and [A.B.] was coming by to see me regularly." However, when the reconciliation ended, the more frequent visits also ended.

On June 23, 2010, Antonio filed and served an order to show cause (OSC) seeking to modify the 2005 custody order regarding child custody and visitation. He requested that the trial court grant joint legal and physical custody of A.B. and a "50/50 timeshare" arrangement. In his supporting declaration, Antonio asserted that A.B., who was then 8 years old, was "crying out" for more time with him, which was what Antonio wanted as well and he argued that such a change would be in A.B.'s best interest. He acknowledged that Shannon had permitted him somewhat more visitation time with A.B. than would have been afforded under the 2005 custody order, but such additional time with his daughter was always subject to Shannon's approval, which Antonio believed was often unreasonably withheld. He argued the current arrangement under the 2005

---

**3** The supervision by Antonio's mother during overnight visits was due to Shannon's concern that, due to Antonio's sleeping patterns, he might not wake up and hear if A.B. became scared and cried out in the middle of the night.

custody order has left him with "little more than a babysitter's influence," and he asserted it was important for A.B. to have more time with him, as her father, and for A.B. to receive the fatherly love and positive influence he can provide to her.[4] He further argued that "if the time shared at each home were equalized it would give [A.B.] more time to adjust to [each] change."

Shannon filed a responsive declaration opposing the relief sought by Antonio. She stated that the "current temporary order" should be continued, but should be modified to allow Antonio more visitation time with A.B, "consistent with the parties' actual practice." She added that "[t]emporary custody and visitation orders have been in place since October 2005 … and under those orders, [Antonio] and I have been able to manage the parenting of [A.B.], for the most part, reasonably well." Her declaration expressed some concerns about issues such as making sure A.B. had a regular bedtime, keeping intact the structure that Shannon's home provided, and a concern that too much switching back and forth between the two homes would not be good for A.B.

On November 24, 2010, the trial of Antonio's OSC regarding child custody and visitation was held. Both Antonio and Shannon testified and exhibits were introduced into evidence. Each party was represented by an attorney, and opening and closing arguments were presented. The minute order of the trial/hearing reflected the trial court's decision that Shannon and Antonio "shall have joint legal and joint physical custody of the minor child, [A.B.]," and a new visitation schedule was set forth which provided, among other things, that Antonio would have visitation on the first, third, fourth and fifth weekends during the school year. Antonio's attorney was directed to prepare a formal order.

---

**4**    He also asserted that the 2005 custody order's requirement of supervision by his mother during overnight visits (due to his alleged sleep issues) had been proven unnecessary and was merely "a vestige of our highly litigated case and [was] no longer required given [A.B.'s] age and acclimation to our parenting plan."

4.

On December 29, 2010, the trial court's "ORDER AFTER TRIAL" was filed and served (the 2010 custody order). With a few minor refinements, the 2010 custody order memorialized the decision announced by the trial court at the November 24, 2010, hearing. The 2010 custody order determined that Shannon and Antonio "shall maintain joint legal and physical custody of their one minor child, [A.B.]" The 2010 custody order also specified that "visitation for [Antonio] during the school year shall be on the first, third, fourth, and fifth weekends of the month," that during summer vacation the parents would share time with A.B. equally as set forth in the order, and it stated how the parents were to handle holidays, spring break and other matters. Additionally, the 2010 custody order stated "this Order … shall be attached to the judgment of dissolution."

On March 2, 2011, the judgment of dissolution was filed in this action. Attached to and incorporated by reference into that judgment was a copy of the 2010 custody order regarding custody and visitation issues. Notice of entry of judgment was also filed and served on March 2, 2011.

Shannon did not file a notice of appeal (timely or otherwise) from the 2010 custody order or from the March 2, 2011, judgment that was attached and incorporated into said 2010 custody order.

On April 22, 2011, Shannon filed a motion labeled (in part) a "MOTION TO RECONSIDER CHILD CUSTODY AND VISITATION," requesting the trial court to reconsider the custody and visitation determinations set forth in the 2010 custody order. In the alternative, Shannon also filed an OSC seeking a modification of the 2010 custody order. Shannon's declaration in support of the requested relief alleged that there were safety issues that warranted reconsideration and/or modification of the custody and visitation arrangement. Shannon contended that A.B. was not entirely safe with Antonio because of his practice of involving her in allegedly dangerous activities, such as entering her in a soap box derby (where she cut in front of another driver), taking her target shooting, allowing her to ride a small, motorized scooter (that she fell off of once), allowing her to

5.

play with a neighbor's dog (her hand was nipped while A.B. tugged at the dog's rawhide chew toy), taking her to Antonio's workplace where there was a machine shop in the back, etcetera. Shannon further argued that the 2010 custody order resulted in changes to a stable custody situation without sufficient evidence to justify such a change. In her points and authorities filed in support of her request for reconsideration and/or modification, Shannon claimed that the trial court should have treated the 2005 custody order as though it were the permanent order, which would have required a strong showing to justify any changes. For these reasons, Shannon asked the trial court to reverse its previous decision (the 2010 custody order) and restore the original (2005) custody arrangement.

On May 25, 2011, Antonio filed a declaration in opposition to Shannon's motion for modification of custody and visitation. In his opposition, Antonio credibly explained his version of what happened in each of the allegedly *unsafe* incidents, and attempted to demonstrate by such evidence that A.B. was completely safe and well-supervised by him when she was under his care.

On August 18, 2011, a trial was held on Shannon's motion for reconsideration and/or modification of the 2010 custody order. At the trial, the trial court informed Shannon that the time for bringing a motion for reconsideration "has long passed," and therefore the court would "look at her motion as [one for] *modification* of child custody and visitation."[5] (Italics added.) Each side presented an opening statement, a number of witnesses testified and exhibits were presented as evidence. After closing arguments, Shannon requested a statement of decision and the trial court took the matter under submission.

On November 7, 2011, the trial court issued its tentative decision. As to Shannon's motion for *reconsideration* of the 2010 custody order, the trial court denied

_____

[5] At this time in the litigation, Shannon was representing herself.

6.

that motion as being untimely under Code of Civil Procedure section 1008. As to Shannon's motion (or OSC) for modification of child custody, the trial court began by noting that the 2010 custody order was a "permanent order," and as such may be modified only upon a showing of a substantial change of circumstances affecting the child's best interests. The trial court reviewed all the evidence of the allegedly unsafe incidents and found that Antonio "[was] not negligent in his supervision of [A.B.] and that [A.B. was] not placed in any substantial risk of danger in his care." The trial court held that Shannon had failed to meet her burden of showing a substantial change of circumstances to justify modification of the permanent custody order. Accordingly, the 2010 custody order that stated the parents would have "joint legal and joint physical custody of their daughter" would remain in effect. Further, the trial court found "no reason to reduce or limit [Antonio's] visitation," and held the visitation schedule set forth in the 2010 custody order would remain the same, with a few minor refinements.[6]

Shannon filed objections to the trial court's tentative decision. On January 12, 2012, the trial court considered Shannon's objections, rejected them, and ordered that the tentative decision filed November 7, 2011, constituted the trial court's final statement of decision.

On February 8, 2012, Shannon filed her notice of appeal, stating that her appeal was from the trial court's order of January 12, 2012.

## DISCUSSION

### I.    Forfeited Issues

As a preliminary matter, we note that much of Shannon's appeal challenges *the 2010 custody order*, including Shannon's contentions that (i) the trial court applied the

---

[6]    The refinements to the visitation schedule included moving the time of pickup and drop-off for weekend visitation to 6:00 p.m. on Fridays and Sundays, and setting parameters on A.B.'s visits to Antonio's workplace.

wrong standard in deciding the custody issues at that time because allegedly the previous custody order (i.e., the 2005 custody order) was the permanent order, not a temporary order[7] and (ii) the attorneys for Shannon and Antonio had a pretrial discussion of issues in chambers in Shannon's absence, which Shannon claims made the subsequent 2010 custody order procedurally unfair to her. The record does not support Shannon's characterizations of the proceedings below,[8] but in any event the issues raised by Shannon to attack the 2010 custody order were forfeited by her and are not reviewable by us because she did not file a timely notice of appeal from the 2010 custody order. The trial court's 2010 custody order, entered after an evidentiary hearing, constituted a final judgment or order—that is, it was a final, permanent custody order. As such, it was an appealable order. (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377-1378; *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088-1089, fn. 2.)[9]

---

[7] Of course, if the 2005 custody order was the permanent order, then the 2010 hearing in which Antonio sought to modify that order would come under the "changed circumstances" rule, which is a variation on the best interest standard. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956.) "Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.]" (*Ibid.*)

[8] In the proceedings below, the 2005 custody order was expressly made a temporary order by the trial court, and it was consistently referred to by Shannon as a *temporary* custody order. As to the in-chambers pretrial meeting, the minute order of the November 24, 2010, hearing (preceding the 2010 custody order) reflected that the "[c]ourt and counsel [met] in chambers to discuss the case," but the matter was then "confirmed for trial." The remainder of the minute order reflected that a regular court trial occurred in which Shannon was present, and evidence and testimony were introduced. Thus, the record confirms that Shannon had her day in court.

[9] Even if there were any reason to doubt that the 2010 custody order was intended as a final and permanent custody order (and the record does not reveal any such reason), the fact that the trial court incorporated it into the final judgment in the case on March 2, 2011, removed that doubt. Shannon also did not appeal from the March 2, 2011, judgment.

When an appealable order or judgment is entered, the aggrieved party has 60 days from notice of entry of said order or judgment in which to file an appeal. (Cal. Rules of Court, rule 8.104(a)(1)(A).) The time is jurisdictional; once the deadline expires, the appellate court has no power to entertain an appeal as to that judgment or order. (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.) Since Shannon failed to timely appeal from the 2010 custody order, her right to challenge that order was forfeited and she cannot be heard to complain now in connection with her present appeal from another order. (*In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1215-1216; Code Civ. Proc., § 906.)

A part of Shannon's appeal also criticizes the fact that the trial court denied her motion for reconsideration of the 2010 custody order. However, as the trial court correctly explained, a motion for reconsideration must be filed within 10 days of service of the subject order. (Code Civ. Proc., § 1008, subd. (a).) The 2010 custody order was served on December 29, 2010, while Shannon's motion for reconsideration was not filed until April 22, 2011. As with her failure to timely appeal from the 2010 custody order, Shannon likewise forfeited her right to bring a motion for reconsideration by failing to file such a motion within the applicable time limitations.

## II.    Standard of Review

According to her notice of appeal, Shannon's appeal is taken from the trial court's January 12, 2012 order, which was the order confirming the tentative decision as the trial court's final statement of decision—that decision being to deny Shannon's motion to modify the 2010 custody order. In essence, then, we are called on to review the trial court's order denying Shannon's request to modify a permanent custody order.

The trial court has wide discretion to choose a parenting plan that is in the best interests of the child. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) Once there has been a final or permanent custody determination, the parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been a significant

9.

"'change of circumstances'" indicating that a different custody arrangement would be in the child's best interest. (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at p. 956; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37.) However, if the requested modification would only alter the details of the parenting schedule or visitation arrangements, and would leave the existing custody order otherwise the same, the trial court applies the best interest of the child standard. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077-1080.)

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.) "The test is not whether this court would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.' [Citation.]" (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595.)

## III.     No Abuse of Discretion Shown

In attempting to show abuse of discretion, Shannon argues (as she did in the trial court) that A.B. was not safe in Antonio's care based on certain activities that he allowed A.B. to participate in. However, as summarized in the trial court's statement of decision, there was substantial evidence presented by Antonio to refute Shannon's characterization of each of those events, including Antonio's own detailed explanations and other corroborating testimony. As the trial court's statement of decision reflected, Antonio's version of what happened was credible, reasonable and supported by the evidence. Although it was clear that Shannon and Antonio have different parenting styles, and Shannon was nervous about A.B. engaging in activities such as soap box derbies and

10.

target shooting, that did not mean that A.B.'s safety was being compromised when she was in Antonio's care. As the trial court properly held, no significant change of circumstances was shown by Shannon that would warrant a modification of the 2010 custody order. On the record before it, the trial court reasonably concluded that the 2010 order continued to be in the best interest of A.B. Accordingly, we hold Shannon has failed to establish the trial court's denial of her modification request was an abuse of discretion. (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.)

## IV. Miscellaneous Other Issues

Shannon complains of several instances in which the trial court excluded evidence she wanted to introduce during the trial of her motion for modification of the custody order. The evidence included such items as photographs of a broken armoire and broken remote control that Antonio allegedly broke in anger, as well as some video footage of the soap box derby. We note the trial court gave reasons for declining to admit the evidence in each instance (e.g., failure to authenticate, remoteness in time, surprise due to failure to disclose pretrial, etc.), but Shannon's appeal has not explained with legal argument and citation to authority why she believes any of those reasons were erroneous.[10]

It is fundamental to appellate law that a trial court's order is presumed to be correct and an appellant must affirmatively show prejudicial error based on adequate legal argument and citation to authority. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556-557.) When points are perfunctorily raised on appeal, without adequate analysis and authority, we pass over them and treat them as abandoned. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.) That is

---

**10** Shannon makes brief mention of Family Code section 3044, but that section relates to evidence of domestic violence perpetrated against one's spouse or child. No such evidence was referenced by Shannon in the record.

the case here.  In addition, even assuming hypothetically that error occurred, Shannon has not shown the exclusion of evidence was *prejudicial* in this case.  (Cal. Const., art. VI, § 13; Code. Civ. Proc., § 475; Evid. Code, § 354.)  "'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice.'"  (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)  That is, an appellant must not only show that error occurred, but that it likely affected the outcome.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 [reversal not warranted unless it appears "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)  Shannon has failed to show any prejudice resulted from the exclusion of the referenced evidence.  For all these reasons, we reject Shannon's appeal on the ground that the trial court excluded evidence.

Additionally, Shannon argues in a conclusory manner that (i) she was unable to pay her share of fees for the attorney appointed by the trial court to represent A.B. in connection with the modification hearing and (ii) the trial court unreasonably relied on what A.B.'s attorney had to say at the hearing.  We summarily reject the second point as lacking in adequate legal discussion, citation to authority, citation to the record, explanation of the nature of the purported error and explanation of why such alleged error was prejudicial.  As to the issue of Shannon's ability to pay her share of the court-appointed attorney's fees, Family Code section 3153, subdivision (b), required the trial court to "determine whether both parties together are financially unable to pay all or a portion of the cost of counsel appointed pursuant to this chapter."  The trial court concluded that both Shannon and Antonio were, at the time of its order, able to pay their share of the fees, which they were ordered to "share equally."  Although it is true, as Shannon points out, that earlier in the family law litigation she filed and obtained a

12.

waiver of certain court filing fees,[11] she has failed to provide and identify (by specific citation) an adequate record to substantiate that the trial court lacked substantial evidence to support its decision that she was not financially unable to pay her share of fees for the court-appointed attorney who represented A.B. in connection with the modification motion.

Finally, Shannon suggests that because the trial court made so many erroneous decisions against Shannon's position, the court must have been biased against her. Since Shannon has failed to show *any* error, the entire premise of her argument fails. Moreover, merely because a judge rules against a party in the course of the proceedings does not make the judge prejudiced against that party.  (See *Kreling v. Superior Court* (1944) 25 Cal.2d 305, 310; *Haldane v. Haldane* (1965) 232 Cal.App.2d 393, 395; Code Civ. Proc., § 170.2, subd. (b).)  We reject Shannon's claim of judicial prejudice as being completely unsupported in the record.

## DISPOSITION

The order of the trial court is affirmed.  Antonio is awarded costs on appeal.


_____
Kane, J.

WE CONCUR:


_____
Wiseman, Acting P.J.


_____
Peña, J.

---

**11**     We note the waiver of court fees on file in the trial court included regular filing fees, costs for making copies and transcript costs, but did not include additional items such as fees for court-appointed experts.

13.