Filed 7/22/21  Karle v. Peene CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| LISA KARLE, | C092073 |
| Plaintiff and Respondent, | (Super. Ct. No. PFL20140577) |
| v. | |
| ROGER PEENE, | |
| Defendant and Appellant. | |

Appellant Roger Peene appeals from a post-judgment order increasing his monthly child support payments to respondent Lisa Karle (formerly Lisa Peene).  Roger argues the trial court misconstrued a stipulation reserving the guideline child support calculation for an evidentiary hearing as a concession that there had been a material change of circumstances warranting modification of the existing child support order, thereby relieving Lisa of her burden of proof.  We disagree and affirm.

## I.  BACKGROUND

Roger and Lisa separated in 2014 after 13 years of marriage.  A judgment of dissolution was entered in September 2016.  Roger and Lisa have two minor children.

1

A.      *The Previous Child Support Order*

Roger and Lisa are both employed in the technology sector.  Roger originally agreed to monthly child support payments of $907.  The parties agreed to increase monthly child support to $1,558 pursuant to a stipulation and order entered in May 2017 (the previous child support order).  The previous child support order provided that base child support would be based on the parties' salaries, with additional child support (or offsets against such support) for any bonus and commission income they might receive, over and above their base salaries.[1]  At the time of the previous child support order, Roger earned a base salary of approximately $20,000 per month, and Lisa earned approximately half that amount.  The previous child support order further provided that the parties would reconcile any such additional support payments each January, for bonus or commission income received in the preceding year.

B.      *Roger's New Job*

On July 30, 2018, Roger informed Lisa by email that he had accepted a new position with Micron Technologies.  Lisa congratulated Roger and asked that he provide information concerning his new salary and benefits.  Roger did not provide the requested information.

C.      *The Request for Order*

On August 22, 2018, Lisa filed a request for order to modify child support.  She acknowledged that she had no information regarding Roger's new salary but theorized that he was likely making more money.  She requested an order requiring Roger to

---

[1] The previous child support order provided that additional child support would be calculated pursuant to an attached bonus table, which has not been made part of our record.  The parties refer to the missing bonus table as an *Ostler-Smith* schedule, and we will do the same.  (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 37 [trial court has discretion to order supporting spouse to pay an additional sum for spousal and child support based on percentage of future bonuses that he or she receives].)

provide information regarding investments and dividends as part of the "January bonus settle up." She also requested sanctions for Roger's refusal to provide information concerning his new salary and other orders not relevant here.

Roger opposed the request for order. He provided a declaration averring that his new salary represented only a 3 percent increase over his old salary. He objected to Lisa's request for additional financial information as unnecessary, adding that: "Investment income, and income from interest and dividends was (and should continue to be) considered as part of base support. Adding income from investments to the bonus table would result in that income being counted twice for support purposes." He argued that a downward modification of child support was warranted to account for changes in Lisa's 401(k) contributions, health insurance premiums, and health savings account.

### D.     The Stipulation

The parties spent several months litigating various discovery disputes. They appeared before the trial court for a hearing on the request for order on April 29, 2019.[2] During the course of the hearing, Roger and Lisa, both represented by counsel, entered into a stipulation resolving some of their differences and tabling others. As relevant here, the stipulation provided: "The guideline child support calculation shall be reserved and deferred to the evidentiary hearing."

### E.     The Evidentiary Hearing

An evidentiary hearing was held on October 10, 2019. Lisa submitted a trial brief in anticipation of the hearing. She argued that Roger had a history of hiding income to reduce his child support payments. She observed that Roger had repeatedly failed to produce relevant documents, leading her to believe he was again trying to hide income. She identified several sources of dividend and interest income that had not been disclosed

---

[2] We have not been provided with a transcript of the hearing.

3

on Roger's income and expense declarations or included in earlier child support calculations. Lisa sought an order imputing interest income to other undisclosed assets and including the imputed income in the *Ostler-Smith* calculation. Lisa also sought attorney fees in the amount of $15,000 and sanctions in the amount of $5,000.

Roger submitted a declaration from his trial counsel entitled, "Declaration of Craig C. Weaver re Calculation of Guideline Child Support." Weaver asserted that Lisa had been contributing bonus income to her 401(k) and opined that changes in her pretax benefits should result in a downward modification of base child support, from $1,558 to $1,328. Weaver further opined that interest income should *not* be included in the calculation of base child support but should instead be subject to an *Ostler-Smith* percentage. This was an about-face from the view expressed in Roger's responsive declaration to Lisa's request for order. But Lisa would also soon undergo a change in position on this issue.

The hearing began with appearances on the record, followed by an off-the-record discussion in chambers. The trial court then went back on the record, indicating that the parties would be submitting closing arguments in writing.

Lisa was represented at the hearing by attorney Aaron B. Dosh. During opening statements, attorney Dosh argued: "Per our discussions in chambers, the primary focus today is going to be on the income available for support over and above the parties'—or [Roger's], specifically, base salary through his employment." Dosh argued that Roger failed to disclose "a significant amount" of dividend and interest income and failed to account for assets that could be earning interest, all of which, he said, should be included in the base child support calculation.

Attorney Weaver agreed with opposing counsel's characterization of the issues in dispute, stating, "Your Honor, I agree with Mr. Dosh—Mr. Dosh's characterization that really we're here about interest and dividend income, and that's really what we're here for." Weaver went on to argue that base child support should be reduced to $1,328.

4

However, Weaver continued, when interest and dividend income were considered, that amount would return to $1,558. Accordingly, Weaver concluded, "my client's position is there simply has not been a change in circumstance since the last order was issued."

During the hearing, attorney Dosh presented evidence that Roger earned dividend and interest income from several previously undisclosed sources, adding an average of nearly $7,000 to his new base salary of $21,667 per month. This was considerably more than suggested by Roger's income and expense declaration, which showed that he received dividend and interest income in an average monthly amount of $2,060.

Attorney Dosh additionally presented evidence that Roger had recently purchased undeveloped land, paying the $550,000 purchase price in cash, and that Roger made an interest-free loan to his girlfriend in the amount of $336,000. Dosh presented evidence that Roger had inherited shares of a dividend-paying stock that were held in a Canadian bank account.[3] Dosh also presented evidence that Lisa had incurred $25,000 to $30,000 in attorney fees seeking financial information from Roger.

Attorney Weaver presented evidence that Roger's total interest and dividend income from all sources ranged from $9,111 to $32,289 per year for each year following the date of separation, an average of $759 to $2,690 per month. This evidence was comprised almost entirely of Roger's testimony and a chart that Roger had prepared to elucidate his testimony. Roger explained that he was anticipating a stock market correction and had recently shifted his investment focus from equities to real estate and private equity loans.

Attorney Weaver examined Roger on the parties' respective net worths at the date of separation and ultimate division of marital assets. These questions drew relevance and

---

[3] Roger testified the shares had been sold and the account closed, but bank records indicated that he still had an open account.

Evidence Code section 352 objections from attorney Dosh, prompting the following exchange with the trial court:

"THE COURT: Is there a large area you're going into here, because I don't — everybody's income fluctuates and hopefully increases over the length of their employment, so what's happened in 2016 doesn't make a lot of difference to me now. The last six months is what we typically use for the income, or the last year, unless there's a pattern, and if there is a pattern, then we use the pattern. You guys know this. [¶] And so I don't know what 2016, in saying there hasn't been a change of circumstances, if that's what you're stating, then it would be—there would be no change in the current orders. [¶] Is that going to be the argument?

"MR. WEAVER: That's correct, Your Honor.

"THE COURT: Go ahead. Answer the question.

"MR. DOSH: Your Honor, I still maintain my objection, because there's no requirement in a child support modification that there be a material change in circumstances. The court is required to make a guideline finding when there is a request made.

"THE COURT: I understand that, and he's welcome to make his argument. He can put it in legal form and support it with any evidence that he has. I understand the law, and I know exactly what I will do with it so—

"MR. DOSH: All right. Thank you.

"THE COURT: I'm just giving him the time to present his case. I think he's entitled to do that. I think you're both entitled to do that. [¶] So go ahead. Ask your question."

Weaver then continued his examination of Roger.

6

A short time later, attorney Weaver showed Roger a DissoMaster report he had prepared to calculate guideline child support.[4] The report reflected a "zero" value for other taxable income. Weaver asked Roger whether he believed the trial court should assign a zero value for his investment income in calculating guideline support. Roger responded, "No. I mean, the current guideline has a dividend interest component. I think this should too. It just comes down to what do we all agree is the right number?" Roger then testified that he expected to earn $20,000 in dividend and interest income in 2019, and believed that an average of $2,200 per month should be included in the calculation of guideline child support.

The hearing came to an end shortly thereafter. The trial court directed the parties to submit post-trial briefs addressing, "what I should believe is the evidence for the computation of support." Lisa and Roger both submitted closing briefs.

F.     The Parties' Closing Briefs

Lisa's posttrial brief framed the case as follows: "The primary issue with regard to child support is [Roger's] Income from Interest/Dividends and Income he can/should be earning on non-income producing assets." Lisa argued the evidence showed that Roger earns nearly $7,000 per month in dividend and interest income, over and above his base salary of $21,666. Lisa also argued that additional income should be imputed to Roger for the undeveloped property and no-interest loan. Lisa argued for a 6 percent rate of return, resulting in imputed income of nearly $4,430 per month. Lisa also argued that an additional $668 should be imputed to Roger for the income producing assets held in Canada.

---

[4] DissoMaster is a computer software program widely used by courts and the family law bar in setting child and spousal support pursuant to the statewide unform guideline set by Family Code section 4055. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, fn. 3.)

7

Roger's posttrial trial brief proposed a different framing. Roger argued the May 2017 child support order could only be modified upon a showing of changed circumstances, and Lisa failed to show that any such change had occurred. According to Roger, the evidence established an *absence* of any change in circumstances, as the parties had each received small raises, resulting in proportionate increases in their base salaries. If anything, Roger argued, the evidence showed that Lisa was now contributing more to her 401k and health savings account, which would warrant a downward modification of child support, from $1,558 to $1,508.

Roger acknowledged that his investment portfolio had changed but dismissed the issue as a "[r]ed [h]erring," arguing that "the amount of income he earns from those investments has remained largely unchanged." Roger estimated that he receives an average of $2,200 per month in dividend and interest income, some $723 less than the estimate reflected in the previous child support order. This difference, Roger argued, "represents a fraction of one percent (1%) of the total income of the parties and therefore should not be viewed as a material change of circumstances." Roger further argued that Lisa failed to lay a foundation for imputing a rate of return on his non-income producing assets and failed to establish a basis for attorney fees. Roger concluded that the request for order should be denied, "as the current order is an accurate representation of a guideline support order and because there has not been a material or substantial change of circumstances since the current order was issued."

Lisa submitted a reply to Roger's closing brief. Responding to Roger's contention that she failed to show a change in circumstances, Lisa argued that (1) it was undisputed that Roger had changed jobs, and (2) financial records obtained through discovery showed that he received more income from investments than previously disclosed. Lisa noted that Roger had never before raised any question about changed circumstances and suggested the argument was made in bad faith.

Roger also submitted a reply brief.  Roger argued, again, that there had been no change in circumstances that would provide the trial court with a basis to modify the previous child support order.  Roger asserted that the increase in his salary was immaterial, and changes in his dividend and interest income were a "non-issue." [5]

## G.      *The Trial Court's Ruling*

The trial court issued a ruling on submitted matters on March 9, 2020.  The trial court began by stating, "The court has carefully observed the witnesses' demeanor, manner of answering or evading the questions asked, and whether their testimony was consistent and credible.  This in-courtroom observation was essential in judging the credibility of the witnesses and in deciding how much weight, if any, to give to the witness's proffered statements."

The trial court then explained that, "The issues set for trial included a modification of child support, income for support calculation, reimbursement of certain expenses for the children, attorney's fees and sanctions."  We are concerned here with the trial court's treatment of the first issue; modification of the child support order.  The trial court ruled: "A motion for modification of support may only be granted if there has been a material change of circumstances since the last order.  ([*Khera v. Sameer*] (2012) 206 Cal.App.4th 1467.)  This is consistent with Roger's argument that there is a need for changed circumstances to modify a child support order.  However, his argument is disingenuous as the parties specifically preserved this issue for trial in their *Stipulation* filed April 29, 2019, wherein it states:  [¶] '[] The guideline child support calculation shall be reserved & deferred to the evidentiary hearing.' "

---

[5] Roger also took issue with Lisa's attempts to impute or otherwise quantify his dividend and interest income.  Roger renews some of these arguments in his reply brief.  We need not reach any of these arguments, as we do not consider arguments raised for the first time in a reply brief.  (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

9

The trial court then quoted from *In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277 (*Joseph*) and *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1021 (*Goodarzirad*), excerpting passages expressing the public policy against agreements divesting courts of jurisdiction over child support. (See *Joseph, supra,* at pp. 1284-1285 ["The rule is repeated in case after case: parties to a divorce cannot abridge the court's ability to act on behalf of the children, either by direct attempts to terminate the court's power, or by attempts to deny attorney's fees where needed to institute or defend against actions for modification of child custody or support orders"]; *Goodazirad, supra,* at p. 1026 ["stipulations between parents involving the minor children which attempt to divest the court of jurisdiction are void and the doctrine of estoppel does not apply"].)

The trial court continued: "However, as noted above, the Court need only look to the plain language of the parties['] *Stipulation* from April 29, 2019[,] to have jurisdiction to modify support as that issue was specifically reserved to the evidentiary hearing. Counsel's arguments that a change of circumstances is required is made moot by the *Stipulation* referred to and entered into by the parties herein."

The trial court then considered factors for the base child support calculation, adopting Lisa's proposed income amounts as the rulings of the court. Based on these amounts, the trial court ordered Roger to pay Lisa $2,737 per month from August 22, 2019, through October 31, 2019, and $2,773 per month thereafter. The trial court also awarded Lisa $20,000 in attorney fees. Neither party appears to have requested a statement of decision.

This appeal timely followed.

## II. DISCUSSION

### A. *Standard of Review*

"Child support orders are subject to an abuse of discretion standard of review. [Citation.] As is standard in this type of review, we do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only if no judge could

10

have reasonably made the challenged decision.  [Citation.]  We review factual findings by determining whether they are supported by any substantial evidence.  [Citation.] Since we are reviewing a child support order, however, we are mindful that 'determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.' " (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1046-1047 (*Cryer*).)

As always, it is " 'appellant's burden to affirmatively show error.' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.)  Furthermore, "error alone does not warrant reversal.  'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.'  [Citation.]  ' "The burden is on the appellant, not alone to show error, but to show injury from the error." '  [Citation.]  'Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record.'  [Citation.]  'Only when an error has resulted in a miscarriage of justice will it be deemed prejudicial so as to require reversal.'  [Citation.]  A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822-823.)

B.      *The Changed Circumstances Rule*

"As a general rule, courts will not modify child or spousal support unless there has been a material change of circumstances following the previous determination." (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357 (*Usher*); see also *Cryer, supra,* 198 Cal.App.4th at p. 1048.)   " " '[T]he reason for the change of circumstances rule is to preclude relitigation over the same facts" and to bring finality to determinations concerning financial support.' " (*Usher, supra,* at p. 357; see also *In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 490 [" 'Without a changed circumstances rule, " 'dissolution cases would have no finality and unhappy former

spouses could bring repeated actions for modification with no burden of showing a justification to change the order' " " "].)

The party seeking modification of a child support order bears the burden of showing changed circumstances sufficiently material to support the modification. (*Usher, supra,* 6 Cal.App.5th at pp. 357-358; *Cryer, supra*, 198 Cal.App.4th at p. 1048.) " 'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.' " (*Usher, supra,* at p. 358.)

" 'There are no rigid guidelines for evaluating whether circumstances have sufficiently changed to warrant a child support modification.' " (*Usher, supra,* 6 Cal.App.5th at p. 358.) "Each case stands or falls on its own facts, but the overriding issue is whether a change has affected either party's financial status." (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015; see also *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556 [" 'So long as the statewide statutory formula support requirements are met (Fam. [Code,] § 4050 et seq.), the determination is made on a case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*' "]; *In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982 ["Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs"].)

"When modifying a support order, the trial court must provide a statement of decision explaining its ruling *if requested* by either parent." (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248; see Fam. Code, § 3654 ["At the request of either party, an order modifying, terminating, or setting aside a support order shall include a statement of decision"].) "Under the doctrine of 'implied findings,' when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence." (*In*

*re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549, fn. 11; *In re Marriage of McHugh, supra,* at p. 1248.)

*C.*      *The Record Does Not Affirmatively Show That the Trial Court Excused Lisa from Satisfying Her Burden of Proof*

Roger argues the trial court erroneously excused Lisa from satisfying her burden of proving a material change of circumstances warranting modification of the existing child support order. He advances two variations on this theme. First, he argues the trial court misconstrued the stipulation as a concession that there had been a material change of circumstances warranting a child support modification. Second, he argues the trial court relied on an improper presumption that such a change occurred. Both of these theories rest on the premise that the trial court viewed the stipulation as dispositive on the merits. We are not persuaded.

A party seeking modification of an existing support order has the initial burden of making a prima facie showing of changed circumstances to obtain an evidentiary hearing on the matter. (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 591-593, citing *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 962.) The changed circumstances rule can thus be seen as encompassing a jurisdictional or quasi-jurisdictional hurdle on the path to an evidentiary hearing on the merits. (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556 ["Statutory procedures for modification of child support 'require a party to introduce admissible evidence of changed circumstances as a necessary predicate for modification' "]; *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988, 991-992 ["a trial court is without authority to modify an award for spousal support in the absence of a substantial change of circumstances occurring subsequent to the entry of the decree"].) The trial court's ruling is best viewed as a determination that the stipulation foreclosed any argument with respect to this threshold jurisdictional issue.

13

Though hardly a model of clarity, the ruling leaves no doubt that the trial court understood Roger to be raising a jurisdictional challenge to Lisa's request for child support modification. The trial court made a point of quoting from cases "regarding . . . attempt[s] to limit the court's power to modify child support," and found "the Court need only look to the plain language of the parties['] *Stipulation* from April 29, 2019[,] to have jurisdiction to modify support as that issue was specifically reserved to the evidentiary hearing." The ruling as a whole makes clear that the trial court understood Roger to argue that the court lacked jurisdiction to modify child support because Lisa failed to make a threshold showing of changed circumstances, " 'a necessary predicate for modification.' " (*In re Marriage of Leonard, supra,* 119 Cal.App.4th at p. 556.) It was this argument, and not any argument on the merits, that the trial court rejected as "disingenuous" and "moot" in view of the stipulation. We do not disagree with the trial court's determination that the stipulation foreclosed any jurisdictional or quasi-jurisdictional challenge to the evidentiary hearing and note that Roger does not attempt to assert any such challenge on appeal.

Roger instead insists the trial court relieved Lisa of her burden of proof. The record does not affirmatively show that the trial court misunderstood or misallocated the burden of proof. To the contrary, the trial court's ruling makes clear that, "A motion for modification of support may only be granted if there has been a material change of circumstances since the last order." The ruling thus accurately states the legal standard for modification of child support. (*Usher, supra,* 6 Cal.App.5th at p. 357.)

The ruling goes on to say that, "Counsel's arguments that a change of circumstances is required is made moot by the *Stipulation* referred to and entered into by the parties herein." But the ruling does *not* say that the stipulation made moot Roger's substantive argument that no material change in circumstances had occurred because his base salary and investment income remained the same. Nothing in the ruling suggests the trial court thought the stipulation foreclosed any such substantive argument, or otherwise

14

understood the stipulation to operate as a concession on the merits. Likewise, nothing suggests the trial court improperly relieved Lisa of her burden of proof. Although the trial court participated in a confusing colloquy regarding the requirements for modification of child support, the court correctly stated those same requirements in the ruling, and the presumption of correctness, requires us to presume that the court properly allocated the burden of proof to Lisa. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [A "judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"].) The doctrine of implied findings likewise requires us to presume that the trial court made all factual findings necessary to support the order; namely, that a material change in circumstances warranted modification of the existing child support order. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 [doctrine of implied findings allows appellate court to infer that the trial court made all factual findings necessary to support its order].)

Roger argues the doctrine of implied findings does not apply. Relying on *Reid v. Moskovitz* (1989) 208 Cal.App.3d 29, he argues an appellate court cannot imply a finding the trial court refused to make. (*Id.* at p. 32 [recognizing an exception to the doctrine of implied findings "when a trial court expressly refuses to make a finding"].) The *Reid* exception does not help Roger. Contrary to Roger's suggestion, the trial court never expressly refused to make any finding here. The trial court rejected Roger's argument that no change of circumstances occurred, but said nothing to preclude an implied finding that a material change in circumstances warranted modification of the previous child support order. Roger's reliance on *Reid* is unavailing.

Roger also tries to avoid the presumption of correctness. His argument proceeds in two parts. First, Roger argues the presumption does not apply because dividend and interest income should have been included in the *Ostler-Smith* calculation, rather than the calculation of base child support. Roger offers no authority for the proposition that

15

dividend and interest income must be included in the *Ostler-Smith* calculation (an argument he only sometimes made in the trial court), and our own research suggests otherwise. (See *In re Marriage of Ostler & Smith, supra,* 223 Cal.App.3d at pp. 41-42 [basing support order on husband's income from salary and dividends and allocating future bonus income as a percentage interest].) We need not resolve this question, however, as we conclude Roger fails to demonstrate error, and therefore, fails to overcome the presumption of correctness. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1133.) Second, Roger argues that, even assuming additional dividend and interest income were properly allocated to base child support, the presumption of correctness should not apply because there was evidence, in the form of his own testimony, that there had been no material change in such income. This argument, too, lacks merit. Lisa presented extensive evidence, both documentary and testimonial, that Roger received an average of almost $7,000 per month in dividend and interest income and held additional assets on which interest income could be imputed. The trial court obviously found Lisa's evidence more credible than Roger's and made no secret of the fact that the relative credibility of the witnesses played an important role in the case. We do not second-guess the trial court's credibility determinations or reweigh the evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) On the record before us, we conclude that substantial evidence supports the trial court's implied finding that Roger's enjoyed a substantial increase in dividend and interest income and controlled assets on which additional interest could be imputed, which together constituted a material change in circumstances warranting modification of the previous child support order. No abuse of discretion appears.

## III.  DISPOSITION

The order is affirmed.  Respondent Lisa Karle shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) &(2).)

/S/

_____,
RENNER J.


We concur:


/S/

_____
BLEASE, Acting P. J.


/S/

_____
MURRAY, J.

17